Robert H. Molitor, Appellant, v. Chicago Title and Trust Company and Justin M. Dall, Appellees.

Gen. No. 42,960.

Heard in the second division of this court for the first district at the December term, 1943.

Opinion filed February 13, 1945. Released for publication March 5, 1945.

ROBERT H. MOLITOR, *pro se* and ROYAL W. IRWIN, of Chicago, for appellant.

GARDNER, CARTON & DOUGLAS, of Chicago, for appellees; ERWIN W. ROEMER, JAMES A. VELDE, HAROLD L. REEVE and CARL F. FAUST, all of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Robert H. Molitor, plaintiff, sued Chicago Title and Trust Company, a corporation, for breach of an employment contract, and also sued Justin M. Dall for damages resulting from the breach of the said contract because of his want of authority, if the evidence should show a want of authority. A jury returned a verdict finding the issues in favor of plaintiff and against Chicago Title and Trust Company and assessing plaintiff's damages at $15,480, and also a verdict finding the issues in favor of defendant Dall. The trial court reserved rulings on motions of defendants for directed verdicts and after verdicts sustained a motion of Chicago Title and Trust Company for judgment in its favor notwithstanding the verdict against it. Plaintiff appeals from that judgment. Judgment was entered upon the verdict in favor of defendant Dall after plaintiff's motion for a new trial had been denied. Plaintiff has not appealed from that judgment. Some days after the entry of the judgment against Chicago Title and Trust Company it entered a motion for a new trial and the trial court entered an order granting the motion, but providing that "this ruling shall not become effective unless and until the order granting the motion for judgment notwithstanding the verdict shall hereafter be reversed, vacated or set aside in the manner provided by law." Plaintiff also appeals from that judgment.

Plaintiff contends that the trial court should not have entertained the motion of defendant Chicago Title and Trust Company for judgment notwithstanding the verdict because no points in writing were filed at any time specifying the grounds upon which such motion was based, as provided by Section 68 of the Civil Practice Act, but we do not deem it necessary to consider this somewhat technical contention in view of the conclusion we have reached as to plaintiff's next contention.

Plaintiff strenuously contends that the trial court erred in sustaining the Chicago Title and Trust

Company's motion for judgment notwithstanding the verdict. Neither in the written motion filed by Chicago Title and Trust Company for a directed verdict at the close of plaintiff's case nor at the close of all the evidence was any attempt made at "specifying the grounds of such motion," as provided by Section 68 of the Civil Practice Act (ch. 110, par. 192, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 104.068]). That section also provides that "if either party may wish to move for . . . a judgment notwithstanding the verdict, he shall, before final judgment be entered, . . . file the points in writing, particularly specifying the grounds of such motion . . . ." The motion for judgment notwithstanding the verdict merely recites that the said defendant "moves the court that judgment be entered for said defendant, Chicago Title & Trust Company, notwithstanding the verdict of the jury."

The complaint alleges that Chicago Title and Trust Company, on or about March 20, 1936, "desiring to continue the service of plaintiff permanently, promised and agreed that in consideration of the plaintiff giving up his residence in the State of New York, and giving up and foregoing all his other engagements and professional connections as aforesaid by moving his family to Cook County, State of Illinois, and thereafter devoting all his time exclusively to the service of the Company, that it would give plaintiff steady, continuous and permanent employment as an examiner of titles; that is to say, for and during the period of his natural life, or so long as said Company required the services of an examiner of titles and plaintiff was willing and able to do such work." Said defendant, in its answer, denies the aforesaid allegations. We may assume from the briefs filed by both parties that the trial court based his ruling upon the assumption that there was no evidence offered by plaintiff that tended to prove an enforceable agreement that plaintiff was

to have permanent employment. The following are the settled principles of law that govern a trial court in passing upon a motion for judgment *non obstante veredicto:*

Rule 22 of the Supreme court provides: "The power of the Court to enter judgment notwithstanding the verdict may be exercised in all cases where, under the evidence in the case, it would have been the duty of the Court to direct a verdict without submitting the case to the jury."

" 'A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the evidence so demurred to, in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's declaration. In reviewing the action of the court of which complaint is made we do not weigh the evidence,—we can look only at that which is favorable to appellant. *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 id. 188; *Lloyd v. Rush,* 273 id. 489.' (*Hunter v. Troup,* 315 Ill. 293, 296, 297.)" (*Mahan v. Richardson,* 284 Ill. App. 493, 495. See, also, *Wolever v. Curtiss Candy Co.,* 293 Ill. App. 586, 597; *Cooper v. Safeway Lines, Inc.,* 304 Ill. App. 302, 312, 313; *McCarthy v. Rorrison,* 283 Ill. App. 129; *Rose v. City of Chicago,* 317 Ill. App. 1, 12.)

Observing these rules we find the following evidence: The Chicago Title and Trust Company is engaged, *inter alia,* in the business of insuring titles to and interests in real estate in Cook county and elsewhere. It employs a large number of men known as title examiners, who are especially trained and experienced in the law of real property and the validity of real

estate titles. It depends upon the ability and integrity of these title examiners to discover defects, if there be any, in real estate titles. In the selection of title examiners it exercises great caution, and applicants for such position go through a long probationary period before they are given "continuous employment." In 1920 plaintiff applied for a position as title examiner and was employed on probation. He had theretofore been engaged in the practice of law in South Dakota. After a number of years of service as a probationer, he was made a regular examiner at a salary of $85 per week. In August, 1927, he quit the services of the defendant company and moved, with his family, to New York to take employment in the office of a former client, the new position paying him twice the salary he was getting as a title examiner. Because of the economic depression, he lost the New York position on February 1, 1933, and he then started to practice his profession in New York—having been admitted to the bar in New York—and by June, 1934, he was commencing to build up a paying practice. About that time one of the departments of defendant company, that was managed by Mr. Dall, was swamped with thousands of HOLC orders for title insurance, and speedy service was demanded. Mr. Dall, in letters and telegrams to plaintiff, asked him to re-enter the employ of defendant company. Dall stated that the company was very busy with rush orders from the HOLC but that there was no profit in the business and that the work would probably last about six months. Plaintiff told Mr. Dall that since 1933 conditions had changed for the better for him and his family and that they now had an income; that from time to time he was getting law business which paid substantial fees; that his wife had a music class in New York from which she derived a substantial income every month and that he might have trouble inducing her to give up her work unless plaintiff would have better prospects in Chicago than in

New York. Further correspondence followed, and plaintiff finally accepted the offer of employment with the understanding that when the HOLC work gave out that Mr. Dall might be free to dispense with his services. In view of the temporary character of the agreement plaintiff decided not to move his family to Chicago. He came to Chicago on July 23, 1934, and told Mr. Dall, in a conference, that he desired to preserve his business connections in New York and to have his wife retain her music classes there, and that it would be necessary for him to be absent from his work with the defendant company when matters came up in New York that required his presence there. Mr. Dall agreed to this arrangement. Immediately following this conference plaintiff went to work for defendant company and for three or four months thereafter the title examiners were obliged to work four hours overtime every day, all day Saturdays, and some Sundays. Plaintiff spent five days in New York in the following September to attend to a legal matter in which he had been appointed referee. He was also absent from his work during the month of June, 1935, when he was conducting legal business for clients in New York and Philadelphia, and was absent again, upon like work, between December 14, 1935, and February 17, 1936. All of the absences were with the knowledge and consent of Mr. Dall. The HOLC work was tapering off in 1935, and it ended on June 12, 1936. About this time Mr. Dall was preparing for an anticipated improvement in the regular business of defendant company and he became dissatisfied with the arrangement that allowed plaintiff to be absent from his work on trips to New York, and in a conference with plaintiff it was agreed that the trips to New York caused undesirable breaks in plaintiff's work and a new agreement as to plaintiff's employment was made. The following is plaintiff's evidence as to the agreement: Dall stated to him that the HOLC work would soon be played out but that they were looking for a big boom in regular

real estate business, and he asked plaintiff to abandon his New York connections and move his family to Chicago so that he could give the company his continuous service from then on. Plaintiff replied that he would not give up his New York connections so long as there was any uncertainty about his employment in Chicago being continuous. Mr. Dall stated that two of the examiners had died, that there was now a place for plaintiff and that he could depend on the position being permanent. Plaintiff asked him what he meant by that, to which Dall replied, ''You can consider yourself employed from now on—the custom here is to retain examiners as long as we can. We have men that have been here all their lives, and there is no reason why you couldn't have a job here the rest of your life.'' Plaintiff replied that if he could rely on that promise he would buy a house in Chicago and move his family here, that his wife had a big music class in New York and that she would refuse to move unless he had a permanent position in Chicago, to which Mr. Dall replied, ''You can rely on it being permanent.'' Plaintiff then accepted the position and told Mr. Dall that he would abandon his New York connections, buy a house here, and move his family to Chicago. His salary was fixed at $70 per week. Plaintiff thereupon continued in his work with defendant company and began preparations for carrying out his part of the agreement. He abandoned all his business in New York and his wife abandoned her music classes. He bought a home at 7219 Vernon avenue and the family moved to Chicago. The defendant company loaned plaintiff $200 to enable him to move. Plaintiff thereafter continued in the employ of defendant company under the arrangements made with Mr. Dall until March 15, 1938, when he was discharged by defendant company upon the ground that business had fallen off to such an extent that the company could not afford to hold plaintiff any longer. There was evidence tending to show that defendant company about two years prior to plaintiff's

discharge employed thirteen new title examiners whose salaries averaged less than forty dollars per week, and that only one of the thirteen was discharged at the time of plaintiff's discharge.

In passing upon plaintiff's instant contention we must assume that defendant company promised plaintiff "permanent employment" and that plaintiff accepted employment because of that promise, and the question is, What did the parties intend by "permanent employment?" Upon the oral argument counsel for the defendant contended that even under plaintiff's testimony as to the alleged agreement defendant had the right to discharge him at will. This contention is without merit and the cases cited in support of it, *Orr v. Ward,* 73 Ill. 318; *Gunther v. C. B. & Q. Ry. Co.,* 165 Ill. App. 55, and *Fuchs v. Weibert,* 233 Ill. App. 536, have no application to the facts that must be taken as true in determining the instant contention of plaintiff.

The leading case that bears upon the facts before us is *Carnig v. Carr,* 167 Mass. 544. We find that that case has been often cited, and always with approval. To quote from the opinion (pp. 546, 547):

"There was evidence tending to show that the defendant agreed that, if the plaintiff would give up his business, which was that of an enameller, and enter his service in the same occupation, he would furnish him with permanent employment at stipulated wages; that the plaintiff gave up his business, and entered the defendant's employment and continued therein several months, receiving wages at the rate agreed, when the defendant suspended his employment, and finally ceased altogether to employ him, though he had work of the kind which the plaintiff was to do.

". . .

"To ascertain what the parties intended by 'permanent employment,' it is necessary to consider the cir-

cumstances surrounding the making of the contract, its subject, the situation and relation of the parties, and the sense in which, taking these things into account, the words would be commonly understood. For it fairly may be assumed that the parties used and understood them in that sense. *Schuylkill Navigation Co. v. Moore,* 2 Whart. 477, 491. Looking at the matter in that way, we think that the words would be commonly understood as meaning that, so long as the defendant was engaged in enamelling and had work which the plaintiff could do and desired to do, and so long as the plaintiff was able to do his work satisfactorily, the defendant would employ him, and that in that sense the employment would be permanent; that is, the plaintiff would be under no necessity of looking for work elsewhere, but could rely on the arrangement thus made. So construed, the contract would be capable of enforcement, and there would be no want of mutuality because the plaintiff might not have bound himself to continue in the defendant's employment. The construction contended for by the defendant, namely, that it was for him to say whether he needed the plaintiff's services or not, would put the plaintiff entirely at the defendant's mercy, and, in view of the fact that the plaintiff was to give up his business to enter the defendant's employment, would be such an agreement as he could not reasonably have been expected to make. See *Russell v. Allerton,* 108 N. Y. 288. On the other hand, it would be equally unreasonable to hold that the defendant could have intended to bind himself to employ the plaintiff so long as they both lived, regardless of his continuing in the enamelling business, or of the plaintiff rendering satisfactory service. The plaintiff does not indeed contend for such a construction. If it is difficult, as the defendant insists that it is, to lay down a rule for estimating the damages arising from the breach of such a contract as we have construed this

to be, the difficulty is no greater than exists in many other cases, and does not present an insuperable objection to recovery.''

In *Riefkin v. E. I. Du Pont De Nemours & Co.,* 290 Fed. 286, the plaintiff was induced to resign from a position with the United States government on a promise of permanent employment. After about two and one-half years of service he was discharged without cause although he had rendered satisfactory service to the defendant. In its opinion the Court of Appeals of the District of Columbia stated (p. 289):

''The circumstances surrounding the making of this contract largely control the interpretation to be given the words 'permanent employment' as used therein, for it must be assumed that the parties, knowing those circumstances, contracted with reference to them. The plaintiff held a position with the United States government, and the defendant agreed that, if he would resign from that position and take charge of the purchase of coal for the defendant, he would be given 'permanent employment in that capacity so long as he rendered satisfactory services and was loyal to its interests.' Relying upon this agreement, plaintiff did resign and perform his part of the contract. May it be said that it was within the contemplation of either party that 'permanent employment,' as used in the contract, meant that the plaintiff, the day following his resignation from his position with the government and the assumption of his new duties, could have been summarily discharged without any liability on the part of the defendant? Such a result could not have been contemplated by either party. The more reasonable view is that the parties contemplated that, so long as the defendant continued in a business requiring the purchase of coal and the plaintiff performed loyal and satisfactory service, he would continue to be employed in the capacity specified in the contract.'' The first case cited in support of the conclusion of the court was

*Carnig v. Carr.* The trial court had held as a matter of law that the plaintiff could not recover and awarded judgment upon the special verdict for the defendant. The Court of Appeals reversed that judgment and remanded the cause with directions to enter judgment for the plaintiff in the amount found by the jury. See, also, *Roxana Petroleum Co. v. Rice,* 235 P. 502, 507; *Millsap v. National Funding Corporation,* 135 P. 2d 407, 409. In *Littell v. Evening Star Newspaper Co.,* 120 F. 2d 36, the court approved the rule announced in *Carnig v. Carr* and other cases, but held that the evidence in the case showed that the minds of the parties never met upon a permanent employment agreement. We do not deem it necessary to refer to cases like *Eggers v. Armour & Co. of Delaware,* 129 F. 2d 729, wherein it appears that the plaintiff suffered injuries in the course of his employment with the defendant and he claimed that the defendant had him sign a written contract that insured him a lifetime job, although we note that the court in the *Eggers* case stated (p. 731) : "The rule is that a contract for lifetime employment will be given effect, according to its terms, if the intention of the parties to make such an agreement is clear, even though the only consideration for it, so far as the employer is concerned, is the promise of the employee to render the service called for by the contract."

But the defendant contends (a) : "There was no evidence that Dall had authority to enter into the alleged contract to employ plaintiff for life or that defendant company ratified the alleged contract;" and (b) "There was no evidence that defendant company acted in bad faith in discharging plaintiff." All of these contentions involve disputed questions of fact and therefore they cannot be considered in determining the instant contention of plaintiff. After a careful consideration of the question before us we have reached the conclusion that the trial court erred in

entering judgment for the defendant company notwithstanding the verdict for plaintiff.

Plaintiff also contends that the trial court erred in entering the order granting the defendant a new trial. The following ground, *inter alia,* was urged in the motion for a new trial: "The verdict of the jury as to defendant Chicago Title & Trust Company is contrary to the manifest weight of the evidence." As this case may be tried again we refrain from analyzing and commenting upon the evidence that bears upon the instant contention. Suffice it to say that the defendants introduced evidence in support of their claim that Mr. Dall did not promise plaintiff permanent employment. The Appellate courts of this State, upon an appeal from an order of the trial court granting a new trial, have consistently held that they would not interfere with an order of the trial court granting a new trial unless the record showed a clear abuse of discretion by the trial court in granting the motion. After a careful consideration of all of the evidence, we are satisfied that we would not be justified in holding that the trial court was guilty of a clear abuse of discretion. We have considered the further contention of plaintiff that the trial court should not have entertained the motion for a new trial and find the contention without substantial merit.

The judgment order of the Superior court of Cook county entered May 13, 1943, entering judgment in favor of the defendant Chicago Title and Trust Company *non obstante veredicto* is reversed. The judgment order of the Superior court of Cook county entered June 3, 1943, setting aside the verdict of the jury and granting the defendant Chicago Title and Trust Company a new trial is affirmed. The cause is remanded for a new trial.

*Judgment order entered May 13, 1943, entering judgment in favor of the defendant Chicago Title and Trust Company non obstante veredicto is reversed. Judg-*

*ment order entered June 3, 1943, setting aside the verdict of the jury and granting the defendant Chicago Title and Trust Company a new trial is affirmed. The cause is remanded for a new trial.*

SULLIVAN, P. J., and FRIEND, J., concur.