ZOE TITCHENER, Plaintiff-Appellant, *v.* THE AVERY COONLEY SCHOOL *et al.*, Defendants-Appellees.

Second District (1st Division)   No. 75-176

Opinion filed June 30, 1976.

Jason E. Bellows, of Chicago, for appellant.

Leonard M. Ring, of Chicago, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff was not retained to teach at the defendant private school beyond the 1973-74 teaching year. She sued the school and its headmaster, John P. Malach, seeking damages and equitable relief on the theory that she had been wrongfully discharged and that defendant Malach had wrongfully interfered with her contractual relationship with the school. Defendants' motion for summary judgment was granted. Plaintiff appeals

contending that there are triable issues of fact which preclude entry of summary judgment.

The summary judgment was entered upon the pleadings, the affidavit and deposition of defendant John Malach and the affidavit of the plaintiff Zoe Titchener. In addition, documentary evidence was considered, including the teaching contract between the parties and the Code of Ethics of the Independent Schools Association of the Central States (ISACS), an association of which defendant school was a member.

The contract, as relevant, included the provision:

> "(a) That the said Zoe Langlois Titchener is hereby employed as a full-time teacher at the School for the period beginning the fourth day of September 1973 and ending on the twelfth day of June 1974 * * *."

In his affidavit attached to the motion for summary judgment John P. Malach stated that it was the school policy to hire on a year-to-year basis; that plaintiff's final contract with the school started on September 4 of 1973 and ended on June 12, 1974; and that there are no tenured positions at the school. He then reviewed the history of plaintiff's association with the school. He said that she had taught there from 1961 through 1965 but that in 1965 she left the employ of the school to accompany her husband on a trip to Australia. In 1971 she submitted an application for employment which was approved and resulted in her employment for the years 1971-72, 1972-73 and 1973-74. He stated that he did not solicit or encourage her to terminate her affiliation with the LaGrange School District and that he had never promised her either lifetime employment or a job for as long as she desired employment. The affidavit detailed several confrontations between plaintiff and Malach which apparently arose over the fact that every teacher was to do her own "ditto" work and to make use of "learning spaces" located in the classroom. He stated that at one point Mrs. Titchener became extremely angered and snapped her fingers at him so that he felt his personal well-being was threatened.

Malach's deposition was also attached to the motion for summary judgment. In it Malach testified that during his period as a headmaster, he was the only person to determine who was to be retained and who was not to be retained as teachers; that plaintiff was the person who approached him and asked him if she could return to the faculty; and that he was the one who met with her when he had determined not to renew her contract and detailed the reasons for his decision. In the deposition Malach stated that during his 14 years as headmaster he had refused to renew the contracts of 12 to 15 teachers. He cited examples of nonrenewals such as a teacher who could not relate to a "new breed of student"; a teacher who allowed too much permissiveness in her classroom; an ineffective teacher who could not relate to the children; and

a teacher who could not relate to the educational needs of bright students.

The Code of Ethics of the Independent Schools Association attached to the motion for summary judgment stated that when an employee's performance is deemed unsatisfactory adequate notice with specific reasons and an opportunity for a hearing shall be given before official action is taken.

It appears from the affidavits that after she was notified of her dismissal by Malach, the board of directors of the defendant school granted her a hearing in which she was allowed to tell her side of the story and that the board concluded that her contract should not be renewed.

Plaintiff's affidavit in opposition to the motion for summary judgment essentially stated that prior to the school year of 1971-1972 she was a tenured school teacher in the LaGrange Public School System; that during that year she heard of a vacancy at defendant school and contacted Malach about the opening; that Malach offered her a higher salary and agreed to pay her expenses to annual school conferences and agreed to enroll her in the school's retirement plan. She stated that before she agreed to accept the offer defendant Malach told her "Your future is here at Avery Coonley and I hope it will be for many years to come." She said she interpreted this statement to mean that she would be able to teach at the school for as long as she wanted to continue. She also stated that since she had previously taught there, she was aware that a system of tenure existed in which teachers were retained indefinitely unless their teaching practices were proven unsatisfactory by parents or by poor student performances on standardized tests. She said that she had never threatened defendant Malach's well-being. She also said that after she was informed of her dismissal in March of 1974 she was never given a hearing by the board of directors of the school or informed of the reasons for her dismissal.

Plaintiff first contends that summary judgment was improper because an issue of a triable material fact (see *Ruby v. Wayman*, 99 Ill. App. 2d 146, 150 (1968)) existed as to whether the contract by its terms was for a one-year period or "for life." She points to the alleged statement of defendant Malach, "Your future is here at Avery Coonley and I hope it will be for many years to come," and argues that it, therefore, became a question for the jury as to whether her contract was for a term of one year or for permanent employment.

■■ The written contract is unambiguous in its provision for a one-year term of service. As a general rule an agreement which has been reduced to writing is presumed to speak the intention of the signing parties and may not be changed by extrinsic evidence. (See, *e.g., Western Illinois Oil Co. v. Thompson*, 26 Ill. 2d 287, 291 (1962).) The construction

of the legal effect of an unambiguous written contract is also, as a general rule, a matter of law for the court to decide. See *Trustees of Schools v. Schroeder*, 2 Ill. App. 3d 1009, 1017 (1971).

Plaintiff's essential argument is, however, that extraneous evidence is admissible because the agreement does not purport to incorporate the entire understanding of the parties, such as to matters of tenure, and, therefore, it is within the province of the trier of the facts to determine what terms comprise the contract as demonstrated by extrinsic evidence showing the intention of the parties. See *Trustees of Schools v. Schroeder*, at 1017.

The written contract, however, cannot fairly be said to comprise only a part of the undertakings of the parties. The written agreement clearly states the intention of the parties to create a fixed term of employment for one ten-month school year and the court could properly so construe the writing as a matter of law.

■■ We reach a similar result even if we assume that the extraneous statement attributed to Malach is admissible to contradict the definite term written into the contract, for the statement is insufficient to establish a definite and certain promise. Statements which are of an informal character and which express only "long continuing good will and hope for eternal association" do not amount to contractual obligations. *Heuvelman v. Triplett Electrical Instrument Co.*, 23 Ill. App. 2d 231, 236 (1959). See also *Kraftco Corp. v. Koblus*, 1 Ill. App. 3d 635, 638-39 (1971).

■■ Nor are we persuaded by plaintiff's argument that Malach's statement became binding because it caused her to relinquish her tenured position with the LaGrange Public School. Under certain circumstances a clear and definite oral agreement for permanent employment based on sufficient consideration may be enforced. (See *Molitor v. Chicago Title & Trust Co.*, 325 Ill. App. 124, 132-35 (1945); see also *Collins v. Parsons College*, 203 N.W.2d 594, 60 A.L.R. 3d 218, 223-24 (Iowa 1973). See also Annot., *Contract for Permanent Employment*, 60 A.L.R. 3d 226-328 (1974).) Here, however, there is no allusion to a clear and definite oral agreement for permanent employment, assuming the truth of plaintiff's counteraffidavit. Further, the affidavits do not establish a special bargained for detriment to plaintiff as consideration for the alleged promise. Plaintiff sought the employment and there are no statements in the affidavits to show that Malach importuned Mrs. Titchener to leave her tenured position in the LaGrange School system.

Plaintiff suggests that the statement of Malach must be considered in light of the existence of a de facto tenure system at the Avery Coonley School. This argument has no basis in the record, however. Plaintiff has not presented any facts to support her claim, and Malach's affidavit

expressly states that no tenure system was in effect. On the contrary, in his deposition he enumerates various instances of nonrenewal of teacher contracts, all of which belie the existence of a tenure system.

■■ Plaintiff next argues that her complaint states a valid cause of action for a malicious interference with a contractual right or a malicious interference with prospective economic advantage. The first of these arguments must die aborning in view of our conclusion that the contract was for a definite term. The defendants refused to hire plaintiff for a new term. She was not discharged during her 1973-74 term. A cause of action for malicious interference with contractual relationships presumes the existence of a valid contract (see *Zamouski v. Gerrard*, 1 Ill. App. 3d 890, 897 (1971)) and will not lie when the contract has already been performed. See also *Marcus v. Wilson*, 16 Ill. App. 3d 724, 730 (1973).

■■ We next consider plaintiff's argument that, even if there is no cause of action for interference with a contractual right because we view the contract as already having been performed, there is such an action for malicious interference with prospective economic advantage. To state this cause of action it is unnecessary to have a valid contract but it is necessary to plead a reasonable expectancy on the part of plaintiff of entering into a valid business relationship and an intentional interference by defendant which prevents the expectancy from ripening into that relationship. (See *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet*, 16 Ill. App. 3d 709, 713-14 (1973), *aff'd in part, rev'd in part on other grounds*, 61 Ill. 2d 129 (1975).) Plaintiff, however, has not advanced sufficient factual allegations in her complaint to support a cause of action based on this theory. Instead, her complaint is for a contractual tort based solely on her allegations that the defendant interfered with an already existing contract.

■■ Plaintiff's final contention relates to her claim that she was not given a hearing prior to her dismissal. As a nontenured teacher at a private school operating on a one-academic-year contract plaintiff had no right to renewal of her contract and was not entitled either by law or by contract to a hearing upon nonrenewal. (See *People v. City of Chicago*, 278 Ill. 318, 326 (1917).) There is no due process guarantee of the procedural rights of a hearing and a statement of reasons for nonrenewal, even in the case of public school teachers. *Board of Regents v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701, 2706-2710 (1972). See also *Chicago Teachers Union v. Board of Education*, 14 Ill. App. 3d 154, 156-57 (1973).

Moreover, the record adequately supports defendants' claim that plaintiff was given a hearing. Since this is true we do not need to consider her claim that she had a contractual right to a hearing based on her argument that the Code of Ethics of ISACS became part of her

employment contract after its adoption or that she became in effect a third-party beneficiary of its provisions regarding hearings upon discharge.[1]

We therefore conclude that there are no triable issues of material fact and that the summary judgment was properly entered. The judgment is affirmed.

Affirmed.

GUILD, P. J., and HALLETT, J., concur.

---

[1] We find nothing in the record to indicate that either party ever contemplated that the Code of Ethics which went into effect after the formation of the contract between the plaintiff and defendant school would become part of their contractual relation. (See *Pauley Petroleum, Inc. v. Continental Oil Co.*, 43 Del. Ch. 366, 231 A.2d 450, 457 (Del. 1967).) Moreover the fact that the Code of Ethics merely furnished guidelines which are not binding on the school is evident from a reading of the Code.