Stephen M. KULA, Plaintiff,

v.

J.K. SCHOFIELD & CO., INC. and
John K. Schofield, Defendants.

No. 86 C 6471.

United States District Court,
N.D. Illinois, E.D.

July 17, 1987.

John J. Moran, Rock, Fusco, Reynolds & Heneghan, John F. O'Meara, Chicago, Ill., for plaintiff.

Donald A. Mackay, Thomas A. Roberts, Sidley & Austin, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Stephen M. Kula filed a three-count complaint in the Circuit Court of Cook County, Illinois, after he was discharged by his employer J.K. Schofield & Co., Inc. ("Schofield & Co."). In count I of the original complaint Mr. Kula alleged that Schofield & Co. breached his employment contract. In count III he alleged that Schofield & Co. breached its implied duty of good faith and fair dealing. Count II is a fraud claim against both Schofield & Co. and its president, chief executive officer and sole shareholder, John K. Schofield.

Mr. Kula is a citizen of Illinois and the defendants are citizens of Florida. The defendants removed this action to this court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1441(b). The defendants then filed a motion to dismiss counts I and III of the original complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendants further moved to dismiss count II under Rule 9 for failure to plead fraud with sufficient particularity. Finally, Mr. Schofield moved under Rule 12(b)(2) to dismiss himself as a defendant for lack of personal jurisdiction.

Plaintiff responded in part by filing an amended complaint consisting of the same claims but with more detailed allegations. Defendants argue that the amended complaint fails to cure the deficiencies of the original complaint and maintain that this action should be dismissed. For the reasons stated, defendants' motion is granted in part and denied in part.

## FACTS

According to the complaint, Stephen Kula is experienced in marketing and servicing certain insurance products to the financial institutions market. Prior to 1985 he was employed as a manager for the Ryan Insurance Group at a salary of $60,000 per year plus benefits. Schofield & Co. is a managing general agent for several insurers. It contacted Kula when it decided to expand its market into the financial institutions area.

Kula and Schofield had discussions in Florida about Kula working for Schofield & Co. Additionally, Schofield phoned Kula in Illinois four or five times to discuss such employment. In January 1985 Schofield & Co. offered to employ Kula as senior vice-president of field operations at a salary of $95,000 per year plus benefits and a potential $95,000 annual bonus. The contract was allegedly for Kula's life "as long as he continued to perform satisfactorily."

Kula accepted Schofield & Co.'s offer. By leaving the Ryan Insurance Group, Kula became ineligible to exercise $120,000 worth of stock options and no longer could participate in Ryan's profit-sharing program or collect bonuses. Those benefits were worth approximately $100,000 per year to Kula. Kula also became subject to

a covenant not to compete with Ryan Insurance Group in selling certain insurance products.

Kula's duties with Schofield & Co. were to develop a marketing and sales program to sell various kinds of insurance to financial institutions. During the contract negotiations Schofield allegedly assured Kula that Schofield & Co. was committed to this new endeavor even though Kula told Schofield that no business would be generated for at least six months and he did not foresee profits in the financial institution area for a substantially longer period of time. However, Schofield & Co. terminated Kula's employment in May 1985, some five months after it began.

## DISCUSSION

### Personal Jurisdiction over Schofield

Schofield & Co. does not challenge that this court has personal jurisdiction over it. However, Schofield argues that the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, ¶ 2–209 (1985), does not permit jurisdiction over him for acts performed on behalf of Schofield & Co.

■ This court has personal jurisdiction over an out-of-state defendant only if an Illinois state court could assert such jurisdiction. *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 569 (7th Cir.1986). In Illinois a plaintiff must meet a two-step test for the assertion of personal jurisdiction over an out-of-state defendant. First, the plaintiff must show jurisdiction is proper under the Illinois long-arm statute. After meeting this first requirement, the plaintiff must show that personal jurisdiction satisfies the constitutional standards of due process and fairness, as defined by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *Young*, 790 F.2d at 569.

The Illinois Supreme Court has interpreted the Illinois long-arm statute as being more limited than due process would allow in some situations. *See Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 436–37, 427 N.E.2d 1203, 1206, 56 Ill.Dec. 657, 660 (1981). One of these limitations is the fiduciary shield doctrine. *See, e.g., Veal Associates, Inc. v. ICI Americas Inc.*, No. 86 C 7137 (N.D.Ill. Nov. 19, 1986) [Available on WESTLAW, DCT database]; *Club Assistance Program v. Zukerman*, 594 F.Supp. 341, 345 (N.D.Ill.1984); *State Security Ins. Co. v. Frank B. Hall & Co.*, 530 F.Supp. 94, 97 (N.D.Ill.1981); *Financial Management Services, Inc. v. Sibilsky and Sibilsky, Inc.*, 130 Ill.App.3d 826, 831, 474 N.E.2d 1297, 1301–02, 86 Ill.Dec. 100, 104–05 (1st Dist.1985). The fiduciary shield doctrine prevents personal jurisdiction over an individual whose contacts with Illinois are solely the result of acts as a representative or fiduciary of a corporation. *State Security*, 530 F.Supp. at 97; *Olinski v. Duce*, 155 Ill.App.3d 441, 443–44, 508 N.E.2d 398, 400, 108 Ill.Dec. 237, 239 (1st Dist.1987). Consequently, if Schofield acted solely in his representative capacity the claim against him must be dismissed for lack of personal jurisdiction.

Schofield's uncontradicted affidavit states that all his dealings with Kula were in his representative capacity. However, Kula argues that the fiduciary shield doctrine should not apply in this case because Schofield & Co. is the "alter ego" of Schofield by virtue of his being chairman of the board, chief executive officer and sole shareholder of the corporation. Plaintiff is correct that the fiduciary shield doctrine will not prevent jurisdiction over an individual defendant where the corporation is the individual's "alter ego." *State Security*, 530 F.Supp. at 98. However, just because an individual is a member of management or holds controlling positions in a corporation does not nullify the protection of the fiduciary shield. *Id.; see also WBC Productions, Ltd. v. Mens Int'l Professional Tennis Council*, No. 84 C 8532, slip op. at 3 (N.D.Ill. Feb. 4, 1985); *Olinski*, 155 Ill.App.3d at 444–45, 508 N.E.2d at 400–401, 108 Ill.Dec. at 239–240. Furthermore, Illinois recognizes that corporate officers, directors and shareholders are "separate and distinct" from the corporation. *Main Bank v. Baker*, 86 Ill.2d 188, 204, 427 N.E.2d 94, 101, 56 Ill.Dec. 14, 21 (1981).

In *State Security,* an individual defendant was a "'major stockholder, president and chief operating agent'" of a company acquired by the corporate defendant and president of a corporate defendant, and had numerous contacts with the plaintiff. Without further facts that the corporation was a "shell," the court refused to pierce the fiduciary shield. *State Security,* 530 F.Supp. at 98. Similarly, Kula has alleged nothing more in his complaint except Schofield's status with respect to Schofield & Co.

Kula argues that *Rao v. Rao,* 718 F.2d 219 (7th Cir.1983), supports his alter-ego theory. In *Rao,* the court refused to find an individual who was the "sole officer, director, and shareholder" of a corporation as a separate entity from the corporation, and consequently held that the individual could not induce the corporation to breach a contract. *Id.* at 225. Assuming *Rao* correctly states Illinois law, *Rao* involved a question of liability of a corporate fiduciary, not a question of personal jurisdiction. Liability of corporate fiduciaries and personal jurisdiction over those representatives are separate questions. *State Security,* 530 F.Supp. at 97 (*quoting Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir.1981)).

■ Where, as here, the issue of personal jurisdiction is to be decided on written submissions before trial on the merits, the party asserting jurisdiction has the burden of making a *prima facie* showing that personal jurisdiction is proper under the relevant jurisdictional statute. *See, e.g., Nelson v. Park Industries, Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied,* 465

U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984). Kula, as the party asserting personal jurisdiction, is entitled to have all disputed factual issues resolved in his favor. *Id.* at 1123. Schofield states in his affidavit that his dealings with Kula were solely in a representative capacity on behalf of Schofield & Co., and Kula has offered nothing to contradict Schofield's assertion. Nor has Kula offered anything to support his claim that Schofield & Co. is Schofield's alter ego, or that the corporation is a sham. Because Kula has failed to make a *prima facie* showing that personal jurisdiction is proper under the Illinois long-arm statute, we grant Schofield's motion to dismiss.[1]

### Count I

Mr. Kula alleges that Schofield & Co. agreed to employ him for life "as long as he continued to perform satisfactorily" (plaintiff's amended complaint, count I, ¶ 14). Plaintiff claims that Schofield & Co. breached that oral contract when it discharged him in May 1985. Under Illinois law[2] an oral contract for permanent employment[3] is enforceable if the parties' intentions concerning the duration are clear and definite and the contract is supported by sufficient consideration. *Ladesic v. Servomation Corp.,* 140 Ill.App.3d 489, 488 N.E.2d 1355, 95 Ill.Dec. 12 (1st Dist.1986); *Martin v. Federal Life Ins. Co.,* 109 Ill. App.3d 596, 440 N.E.2d 998, 65 Ill.Dec. 143 (1st Dist.1982).

■ The Illinois Supreme Court has never decided what constitutes sufficient consideration to support a permanent employ-

---

1. Because we find that Schofield's acts do not support jurisdiction under Illinois' long-arm statute, we need not determine if jurisdiction is consistent with due process. *Young,* 790 F.2d at 569. We note, however, that one court in this district has stated that if an individual's only contacts with a forum were in his representative capacity, such contacts would not satisfy the requirements of due process and the concepts of "fair play and substantial justice." *Rog v. Professional Window & House Cleaning, Inc.,* No. 84 C 4198 (N.D.Ill. Aug. 4, 1986) [Available on WESTLAW, DCT database]. *But see Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984).

2. Only plaintiff has briefed the choice of law issue. He contends that Illinois law applies and defendants rely on Illinois cases to support their position. We therefore treat Illinois law as controlling. *See, e.g., Casio, Inc. v. S.M. & R. Co.,* 755 F.2d 528, 531 (7th Cir.1985); *Gonzalez v. Volvo of America Corp.,* 752 F.2d 295, 299 (7th Cir.1985) (*per curiam*).

3. For the purpose of this motion to dismiss we use the terms "permanent employment" and "lifetime employment." Any difference in the meaning of these terms is immaterial on this motion.

ment contract. We must therefore attempt to determine how that court would decide the issue, giving due respect to rulings of the Illinois Appellate Court. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

Looking first at recent appellate court cases, we find that different panels within the First Appellate District disagree on the issue of sufficient consideration. *Ladesic* holds that foregoing another offer of employment is not sufficient consideration and that some additional consideration other than the employee's service for pay is necessary. *Ladesic,* 140 Ill.App.3d at 492–93, 488 N.E.2d at 1357–58, 95 Ill.Dec. at 14–15. *Martin,* on the other hand, holds that rejecting a job offer to stay with an employer is sufficient consideration to support an oral agreement for permanent employment. The *Martin* court further states that the concept of "additional consideration" is a "rule of convenience" used to clarify the parties' intentions. *Martin,* 109 Ill.App.3d at 602, 440 N.E.2d at 1003, 65 Ill.Dec. at 148. Specifically, the *Martin* court stated:

If the parties bargained for and exchanged [promises for permanent employment] the consideration element would appear to be satisfied. . . .

*Id.* at 601, 440 N.E.2d at 1003, 65 Ill.Dec. at 148. Although *Ladesic* explicitly criticizes *Martin,* the *Martin* court's view is more in line with the modern concepts of consideration. *See* Restatement (Second) of Contracts § 71 & comment c, § 79 (1981); E. Farnsworth, *Contracts* § 2.11, at 66–67.

Additionally, a recent Illinois Supreme Court decision affecting at-will employees indicates that that court would not require additional consideration. In *Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 505 N.E.2d 314, 106 Ill.Dec. 8 (1987), the court held that language in an employee handbook can modify the employment at-will doctrine. More significantly, the court stated:

The majority of courts, however, interpret the general "employment at-will rule" as a rule of construction, mandating only a presumption that a hiring without a fixed term is at will, a presumption which can be overcome by demonstrating that the parties contracted otherwise.

*Id.* at 489, 505 N.E.2d at 318, 106 Ill.Dec. at 12.

Although the *Duldulao* court was not considering a permanent employment contract, this language supports the *Martin* court's view. Martin is further supported by *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983), a case that the *Duldulao* court found "particularly persuasive." While *Pine River* also involved the issue of the effect of an employee handbook, the Minnesota Supreme Court discussed whether additional consideration was required to support an employer's additional promise of job security. That court stated that additional consideration was helpful in determining the parties' intent but not required to support the job security promise. *Id.* at 628–29. *See* Restatement (Second) of Contracts § 80 & comment a (1981).

Relying on *Pine River,* the *Duldulao* court found that an employee's continued performance is the only consideration necessary to support the additional promises in a handbook. *Duldulao,* 115 Ill.2d at 490, 505 N.E.2d at 318, 106 Ill.Dec. at 12. Consequently, the Illinois Supreme Court would probably hold that no additional consideration is necessary to support an employer's promise of permanent employment.

*Duldulao* is significant for another reason. The result gives one more indication that the Illinois Supreme Court is continuing to chip away at the employment-at-will doctrine. Additionally, *Duldulao* shows that once again, when faced with a split in the appellate court (and federal courts applying Illinois law), the Illinois Supreme Court tends to resolve conflicts in favor of the at-will employee. *See id.* at 488–89, 505 N.E.2d at 317, 106 Ill.Dec. at 11; *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 178, 384 N.E.2d 353, 355, 23 Ill.Dec. 559, 561 (1978) (split in 4th district).

We therefore conclude that the Illinois Supreme Court would probably adopt rea-

soning similar to the *Martin* court and find that a permanent employment agreement needs no additional consideration. Because courts are leery of allegations of permanent employment, we expect that the Illinois Supreme Court would follow *Martin* (and *Pine River*) and use the concept of additional consideration to show the parties' intent. Consequently, if leaving a job (and the benefits that go with it) was bargained for, this supports the assertion that the parties clearly intended a permanent employment agreement. On the other hand, if leaving a job was simply incidental to accepting new employment and not bargained for, this would negate an argument that the parties intended a permanent employment agreement. Thus, the additional consideration is a sacrifice that the employee "probably would not have made absent a guarantee of continued permanent employment." *Smith v. Board of Education,* 708 F.2d 258, 263 (7th Cir.1983).

■ Even if the Illinois Supreme Court does not adopt the view that the additional consideration is used merely to determine the parties' intent, we believe that relevant appellate court cases support the assertion that Kula has pleaded sufficient consideration to support a permanent employment contract. Neither *Ladesic* nor *Martin* involved an employer-defendant soliciting the services of an employee-plaintiff who in turn left an existing job to accept the offer. *Cresswell v. Bausch & Lomb, Inc.,* No. 85 C 5822, slip op. at n. 10 (N.D.Ill. Nov. 21, 1986) [Available on WESTLAW, DCT database]; (Lexis, Genfed library, Dist. file). A more analogous case than either *Ladesic* or *Martin* is *Titchener v. Avery Cooney School,* 39 Ill.App.3d 871, 350 N.E.2d 502 (2d Dist.1976). In *Titchener,* the plaintiff left a tenured teaching job and applied for a new position at a higher salary. The court refused to find an oral contract for permanent employment because of insufficient consideration.[4] Because the new employer did not solicit the plaintiff to leave

her job, the *Titchener* court found no "special bargained-for detriment," and thus insufficient consideration. *Id.* at 875, 350 N.E.2d at 507. Kula's situation is exactly opposite. He was solicited for the job and left his position with Ryan Insurance to accept the new position, giving up a number of fringe benefits and triggering the covenant not to compete in his employment agreement with Ryan Insurance. This appears to be exactly the "special bargained for detriment" that was not present in *Titchener.*[5]

*Molitor v. Chicago Title & Trust Co.,* 325 Ill.App. 124, 59 N.E.2d 695 (1st Dist. 1945), further supports the conclusion that Kula has alleged sufficient consideration for the employment agreement described in the complaint. In *Molitor,* a lawyer had a temporary job in Chicago and kept his private law practice in New York. The defendant allegedly offered the lawyer lifetime employment, which he accepted. The lawyer left his law practice, his wife left her teaching job and they moved to Chicago. *Id.* at 130–31, 59 N.E.2d at 697. The *Molitor* court assumed there was a contract for permanent employment and analyzed what permanent employment meant. Similarly, Kula alleges that Schofield & Co. recruited him and that he left an existing position in exchange for a promise of lifetime employment. Under the circumstances, we believe that is sufficient consideration to support the oral contract alleged here, at least for the purposes of a motion to dismiss.

■ Finding adequate consideration, however, does not end the inquiry. Kula must also show that the parties clearly and definitely expressed their intentions concerning duration. Kula alleges that he was offered lifetime employment (amended complaint, count I, ¶ 14). This is clear language similar to that in *Molitor,* which shows the intent of the parties as opposed to an indefinite statement as was present in *Titchener* (" 'Your future is here ... and I

---

4. The court first stated that the plaintiff had not shown that a permanent employment contract was the clear intent of the parties. *Titchener,* 39 Ill.App.3d at 875, 350 N.E.2d at 507.

5. The *Ladesic* court expressly endorsed the holdings of *Titchener. Ladesic,* 140 Ill.App.3d at 493, 488 N.E.2d at 1358, 95 Ill.Dec. at 15.

hope it will be for many years to come.'" *Titchener*, 39 Ill.App.3d at 874, 350 N.E.2d at 506). Therefore, Kula has alleged the second element required to enforce an oral permanent employment contract.

■ Schofield & Co. only briefly makes the point that the words "satisfactory performance" equate to at-will employment (defendants' reply mem. in support of their motion to dismiss at 7). Courts in Illinois have held that such language does not limit an employer's right to terminate an at-will employee. *Gordon v. Matthew Bender & Co.*, 562 F.Supp. 1286, 1292 (N.D.Ill.1983); *Kendall v. West*, 196 Ill. 221, 225, 63 N.E. 683, 684 (1902); *Ray v. Georgetown Life Ins. Co.*, 94 Ill.App.3d 863, 865, 419 N.E.2d 721, 722, 50 Ill.Dec. 613, 614 (3d Dist.1981). However, Kula is not arguing that he was an at-will employee. On the contrary, Kula alleges he was a permanent employee.

Courts that have considered permanent employment agreements have recognized that satisfactory performance language is consistent with a permanent employment contract. *Martin*, 109 Ill.App.3d at 598, 609, 440 N.E.2d at 1001, 1008; 65 Ill.Dec. at 146, 153; *see Heuvelman v. Triplett Electrical Instrument Co.*, 23 Ill.App.2d 231, 235, 161 N.E.2d 875, 877 (1st Dist. 1959); *Molitor*, 325 Ill.App. at 133–39; 59 N.E.2d at 698–99. In fact, if a contract is construed to give effect to the intent of the parties, we believe that reasonable employees and employers would understand that permanent employment subject to satisfactory performance would limit an employer's right to discharge the employee so long as the employee's performance was objectively satisfactory. Consequently, we hold that the words "satisfactory performance" do not transform a permanent employment agreement into an at-will relationship.

### Count III

In count III Kula alleges Schofield & Co. breached an implied covenant of good faith and fair dealing of the employment contract. Kula does not state whether this claim is a breach of contract or is based on a tort cause of action. Under either alter-native, however, Schofield & Co.'s motion to dismiss must be granted.

■ Count III is pleaded as an alternative to count I (plaintiff's mem. of law in support of plaintiff's motion for leave to file amended complaint, at 9). Consequently, for the purposes of deciding the motion to dismiss count III, we will assume an at-will employment agreement. Illinois law, however, is clear on this issue. There is no implied covenant of good faith and fair dealing in at-will employment contracts. *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 215 (7th Cir.1986); *Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927, 931–33 (N.D.Ill.1985) (imposing sanctions against attorney who filed claim based on implied covenant of good faith and fair dealing where Illinois law controlled); *Gordon v. Matthew Bender & Co.*, 562 F.Supp. 1286, 1290 (N.D.Ill.1983); *Dykstra v. Crestwood Bank*, 117 Ill.App.3d 821, 826, 454 N.E.2d 51, 55, 73 Ill.Dec. 307, 311 (1st Dist.1983); *Criscione v. Sears, Roebuck & Co.*, 66 Ill.App.3d 664, 669–70, 384 N.E.2d 91, 95, 23 Ill.Dec. 455, 459 (1st Dist.1978).

Neither does this claim state a tort cause of action in Illinois. Although the Illinois Supreme Court has recognized a tort of wrongful discharge, this action is only available where the "discharge violates a clearly mandated public policy." *Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 525, 478 N.E.2d 1354, 1356, 88 Ill.Dec. 628, 630 (1985). *See also Price v. Carmack Datsun, Inc.*, 109 Ill.2d 65, 67, 485 N.E.2d 359, 360, 92 Ill.Dec. 548, 549 (1985); *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 129–32, 421 N.E.2d 876, 878–79, 52 Ill.Dec. 13, 15–16 (1981). In a similar case to this the *Martin* court refused to recognize a tort cause of action for breach of an implied covenant of good faith and fair dealing. *Martin*, 109 Ill.App.3d at 606, 440 N.E.2d at 1006, 65 Ill.Dec. at 151. Furthermore, recognition of such a tort "would eviscerate the at will doctrine altogether." *Gordon*, 562 F.Supp. at 1290.

By its recent rulings restricting the tort of retaliatory discharge, the Illinois Supreme Court has clearly indicated it does

not intend to destroy the at-will doctrine. As that court recently stated:

> The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois except for when the discharge violates a clearly mandated public policy.

*Barr*, 106 Ill.2d at 525, 478 N.E.2d at 1356, 88 Ill.Dec. at 630. We therefore grant Schofield & Co.'s motion to dismiss count III.

### Count II

Schofield & Co. challenged this count for failure to plead fraud with sufficient particularity. Kula responded by filing an amended complaint further detailing the alleged fraud. The amended complaint complies with the requirements of Fed.R. Civ.P. 9(b) and consequently Schofield & Co.'s motion to dismiss is denied.

■ Rule 9(b) serves three functions: prevention of claims filed solely to discover some unknown fraud; protection of defendants' reputations; and notice to defendants. *Morgan v. Kobrin Securities, Inc.*, 649 F.Supp. 1023, 1028 (N.D.Ill.1986). In *Morgan*, the complaint alleged what information the defendant gave the plaintiffs, as well as what the alleged misrepresentations were, and where and when those misrepresentations were communicated to the plaintiffs. This court found those allegations sufficient to survive a Rule 9(b) motion.

■ In his amended complaint Kula has outlined the fraudulent scheme: promising long-range support for Kula's efforts to set up a program to sell certain insurance products to financial institutions, when in fact Schofield & Co. intended to discontinue this program and terminate Kula if the venture was not immediately profitable (amended complaint, count II, ¶¶ 10–11). Furthermore, the complaint specifies the alleged misrepresentations as well as when those misrepresentations were made. *Id.* at ¶ 11. Consequently, these allegations satisfy Rule 9(b).

■ In their reply memorandum defendants for the first time argue that the complaint does not state a cause of action under Illinois law because the alleged misrepresentation was only Schofield & Co.'s "present intention with respect to future activity" (defendant's reply mem. at 10). Defendants have cited no cases to support their position. However, conduct similar to the defendants' has been held to be actionable in Illinois. *Brudnicki v. General Electric Co.*, 535 F.Supp. 84, 88 (N.D.Ill. 1982). *See generally* cases cited in *Evanston Bank v. ContiCommodity Services, Inc.*, 623 F.Supp. 1014, 1027–28 (N.D.Ill. 1985); *Brudnicki*, 535 F.Supp. at 88.

### CONCLUSION

For the reasons stated in this order defendants' motion to dismiss count III is granted. Schofield's motion to be dismissed as a plaintiff is granted. Schofield & Co.'s motion to dismiss counts I and II are denied.