Louise TAYLOR, Executrix for
the Estate of Jerry Taylor,
Plaintiff–Appellant,

v.

CANTEEN CORPORATION,
Defendant–Appellee.

No. 95–1107.

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1995.

Decided Oct. 27, 1995.

Rehearing Denied Nov. 30, 1995.

Patricia C. Benassi, argued, Benassi & Benassi, Peoria, IL, for Plaintiff–Appellant.

Max G. Brittain, Jr., argued, Wendy L. Nutt, Brittain, Sledz, Morris & Slovak, Chicago, IL, Homer W. Keller, Westervelt, Johnson, Nicoll & Keller, Peoria, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, RIPPLE, Circuit Judge, and NORGLE, District Judge.*

RIPPLE, Circuit Judge.

Jerry Taylor filed suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, after he lost his job as a maintenance supervisor in the vending division at the Canteen Corporation ("Canteen"). He also brought a supplemental Illinois state law claim against Canteen alleging intentional breach of an oral employment contract. The district court granted Canteen's motion for summary judgment on both claims and Taylor, represented by the executrix of his estate, appeals. For the reasons that follow, we affirm the judgment of the district court in part and reverse and remand in part.

* The Honorable Charles R. Norgle, Sr., of the Northern District of Illinois, is sitting by designation.

# I

## BACKGROUND

### A. *Facts*

Canteen is engaged in the business of providing on-site cafeteria and food vending services to businesses, governmental entities, and health care and recreational facilities across the nation. The food services division operates full service employee cafeterias on clients' premises, provides catering services, and operates food concessions at sports arenas and public facilities. The vending division provides clients with coin operated vending machines that are serviced regularly by Canteen personnel.

Jerry Taylor began working for Canteen in 1954 in its Peoria Region vending division. Taylor became a member of a collective bargaining unit in 1964 and held various positions in the bargaining unit until August 1978 when he took a position as a maintenance supervisor. Canteen solicited Taylor, who at the time was the most senior maintenance person working for the company, for the position. Taylor resigned from his union-secured job when he accepted the supervisor position and claims that Donald Bross, then-Regional Manager for Canteen, told Taylor that he would have "nothing to worry about" in regard to his loss of seniority and job security. Taylor claims he was told he would "not have to be concerned with job security" and that he could work as a maintenance supervisor for "as long as he wished or until he retired." Taylor maintains that he accepted the offer in reliance on these assurances. Canteen denies that any such promises were made to Taylor.

In the early 1980s, Canteen's business base was dependent upon large manufacturing accounts. In Peoria, Caterpillar Corporation accounted for eighty percent of Canteen's vending business in 1983 and 1984. The economy in the Peoria area declined in the early to mid-1980s, and Caterpillar in particular experienced a sharp economic downturn. Between 1981 and 1984, Canteen's vending revenues fell by thirty-five percent and the number of vending routes decreased by forty-four percent. In late 1984 and early 1985, twelve jobs, including Taylor's, were eliminated in the Peoria Region. At the time his job was eliminated, Taylor was the oldest employee and had been employed longer than any other employee in the region; he was fifty-six years old and had worked for Canteen for thirty years. Taylor was the only vending department manager who was eligible for early retirement.

On October 22, 1984, Taylor was called to a meeting with Jim Richardson, the general manager of the Peoria Region vending division, and John Herring, the district manager of Canteen's vending division. The parties dispute much of what was said at the meeting; though it is clear, however, that Taylor was told that his position would be eliminated as of November 1, 1984 and that there were no other vending positions within Canteen to which he could be transferred. Canteen maintains that Richardson gave Taylor three options—early retirement, lay off with the possibility of recall, or movement into the clerical or food services area—and that Taylor was told to contact Richardson regarding his choice of options. According to Canteen, Taylor did not indicate that he wanted to transfer to another division. Taylor maintains that he was not given any employment option aside from early retirement, that he told Richardson that he did not want to retire, and that Richardson did not tell him that he needed to contact Richardson in order to be considered for another position. Taylor's position as a maintenance supervisor was not reactivated and his former duties were assumed by other members of Canteen's vending division. Taylor was not rehired following the termination of his position.

In July 1984, Taylor suffered a series of transient ischemic attacks ("TIAs"), which involve brief interruptions of the blood supply to the brain, that impaired his memory. Taylor went on short-term disability leave until early October 1984. On October 8, 1984, Taylor returned to work and presented Canteen with a written release from his physician allowing him to return to work. In late October, approximately a week after Taylor was notified that his job was being terminated, he experienced a reoccurrence of TIA and the consequent memory problems.

Again, he went on short-term disability. In January 1985, Dr. Mac Bradley examined Taylor and reported that he had organic brain impairment and had problems with his memory and visual-spacial orientation. Dr. Bradley, a psychologist, believed Taylor could not return to his former work but might be able to perform non-supervisory work:

My diagnosis would be Dementia (DSM 294.10) and Adjustment Disorder with depressed mood (DSM 309.00). I cannot say exactly when he sustained the brain damage, and it does seem that the loss of his job was an important life influencing factor in addition to the brain damage. While Mr. Taylor may not be able to return to his former job, I would hope that gainful employment could be found for him. I think there are a number of jobs that he could do and could do well, although, these may not be supervisory positions similar to the ones he has had.

On February 13, 1985 Taylor's short-term disability expired. Taylor then began receiving vacation and severance pay which continued until October 1985. Taylor also received unemployment insurance benefits. In April 1985, Taylor applied for long-term disability benefits under Canteen's benefit plan, as well as for Social Security Disability Insurance Benefits. At that time, Dr. John McLean and Dr. Gregg Stoner examined Taylor and submitted a report to Canteen's insurance company that stated Taylor had been continuously and totally disabled since October 30, 1984, was unable to do any work requiring processing of information, and would never be able to return to work. In July 1985, Dr. Mortimer Beck, a psychiatrist, examined Taylor and also submitted a letter to Canteen's insurance company stating that Taylor was not disabled and was able to return to work. At this time, Taylor was also examined by Dr. Abul Faizi who submitted a report to the Social Security Administration stating that Taylor suffered from organic brain damage and had significant impairment in memory, problem solving skills and abstract thinking. Taylor was denied benefits under Canteen's long-term disability plan but awarded Social Security Disability Insurance Benefits in August 1985.

## B. Earlier Proceedings

Taylor filed an age discrimination claim against Canteen with the Illinois Department of Human Rights and brought a breach of contract claim against Canteen in Illinois state court. Following passage of the Age Discrimination Claims Assistance Act of 1988, Pub.L. No. 100–283, 102 Stat. 78 (1988); see 29 U.S.C.A. § 626 note, Taylor consolidated his claims in federal district court. Canteen then filed separate motions for summary judgment on each of Taylor's claims.

The district court initially determined that, contrary to Taylor's claim that he was not terminated until October 1985, the record indicated that Taylor was terminated effective November 1, 1984. The court then determined that Taylor was unable to establish that the reasons Canteen proffered for his termination without recall or transfer were pretextual. There was no dispute, the court noted, that Taylor was told during the October 22, 1984 meeting that his managerial position was being eliminated as of November 1 and that there were no positions to which he could transfer. Alternatively, the court presumed that Taylor's termination date could be no later than February 13, 1985. At that time, Taylor's short-term disability benefits expired and he began receiving severance pay and unemployment benefits. Taylor could not plausibly argue, concluded the court, that he was employed after the date upon which the record established he had been severed from Canteen's payroll. These alternative termination dates proved significant. Because Taylor was unable to show (1) that any position for which he was qualified became available at Canteen prior to February 13, 1985 or (2) that he ever applied for any specific position within the company, the district court determined that he could not establish that Canteen's reasons for failing to recall or transfer him to non-existent or non-preferenced positions were pretextual.

The district court also granted summary judgment against Taylor on his supplemental breach of contract claim. The court recognized that, under Illinois law, there is a re-

buttable presumption that employment is "at will." A plaintiff seeking to rebut this presumption on the ground that an oral employment contract existed must show the employer made a "clear and definite" promise of employment that was supported by "adequate consideration." In the district court's view, Donald Bross' alleged statements to Taylor were not sufficiently "clear and definite" to create a contract. The court also relied upon cases interpreting Illinois law holding that giving up a union job for a non-union job with the same company does not constitute "adequate consideration." Finding Taylor's case directly analogous to these precedents, the district court granted Canteen's motion for summary judgment.

## II

## DISCUSSION

■ We review a grant of summary judgment de novo, viewing the record and all inferences to be drawn from it in the light most favorable to the non-moving party. *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir.1994). We shall affirm a grant of summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When the party opposing a motion for summary judgment bears the burden of proof on the issue at trial, he must affirmatively demonstrate that a genuine issue of material fact exists requiring a trial. *Courtney*, 42 F.3d at 418.

### A. *Age Discrimination*

#### 1.

■ The ADEA prohibits employer discrimination against individuals forty years of age and older, 29 U.S.C. § 631(a), with respect to compensation, terms, conditions or privileges of employment. *Id.* § 623(a).[1] In order to maintain a claim under the ADEA, a

plaintiff must establish that he would not have been treated adversely by his employer "but for" the employer's motive to discriminate against him because of his age. *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 657 (7th Cir.1991) (en banc); *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 232 (7th Cir. 1992); *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988) (*Oxman I* ); *see also Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995). A plaintiff may establish age discrimination in one of two ways. He may present direct or circumstantial evidence that age was the determining factor in the adverse employment action or he may invoke the burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to create an inference of age discrimination. *Konowitz*, 965 F.2d at 232; *Oxman I*, 846 F.2d at 452.

■ Plaintiffs in reduction in force ("RIF") cases bear no heavier a burden of proof than other ADEA plaintiffs. *Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1163 (7th Cir.1994). To prove discrimination under the *McDonnell Douglas* burden-shifting analysis, an ADEA plaintiff initially must establish a prima facie case by showing: (1) he was in the protected age group; (2) he was performing his job satisfactorily or was qualified for the job for which he applied; (3) he was discharged, not hired, not promoted, etc.; and (4) younger employees were treated more favorably. *Roper v. Peabody Coal Co.*, 47 F.3d 925, 926 (7th Cir.1995); *see also Kralman v. Illinois Dep't of Veterans' Affairs*, 23 F.3d 150, 155–56 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994). If the plaintiff establishes a prima facie case, there is a rebuttable presumption of age discrimination. *See St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (citing *Texas Dep't of Community*

---

1. At the time of Canteen's alleged discrimination against Taylor, the ADEA applied to individuals "at least 40 years of age but less than 70 years of age." 21 U.S.C. § 631(a) (1984). The 1986 amendments to the Act struck out the phrase "but less than 70 years of age." *See* Pub.L. No.

99–592, § 2(c)(1), 100 Stat. 3342, 3342 (1986). Taylor falls within the statutory protections under either version of the Act; we have cited the current version of the statute in the text for the benefit of the bar.

*Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). The burden of production then shifts to the employer to articulate a legitimate non-discriminatory reason for discharging the plaintiff; if the employer meets its burden of production, the burden shifts back to the plaintiff to show that the employer's proffered explanation is merely a pretext for age discrimination. *Roper,* 47 F.3d at 926; *Oxman v. WLS–TV,* 12 F.3d 652, 657 (7th Cir. 1993) (*Oxman II* ). At all times, however, the plaintiff retains the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him based upon his age. *St. Mary's Honor Ctr.,* —— U.S. at ——, 113 S.Ct. at 2749; *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1123–24 (7th Cir.1994).

### 2.

Taylor maintains that Canteen discriminated against him by terminating and refusing either to transfer or rehire him. He does not contend that his position was eliminated because of discrimination or that Canteen's explanation for the RIF is pretextual, but submits that he was treated differently than younger employees who were able to retain employment with Canteen, either through transfer to another position or recall to the same or a new position after a period of layoff.

▬▬▬ In addressing Taylor's contentions, we note initially that the ADEA does not mandate that employers establish an interdepartmental transfer program during the course of a RIF; an employer incurs no duty to transfer an employee to another position when it reduces its work force for economic

reasons. *See, e.g., Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1083 (11th Cir.1990); *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1422 (9th Cir.1990); *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 942 n. 6 (6th Cir.1987). However, an employer implementing a RIF may not favor younger employees over older ones by finding new positions only for younger workers. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 204 (2d Cir.1995); *see also Holmberg v. Baxter Healthcare Corp.,* 901 F.2d 1387, 1392 (7th Cir.1990); *Oxman I,* 846 F.2d at 455 n. 3; *Rose,* 902 F.2d at 1422–23. Thus, Canteen, although not initially obligated to recall or transfer Taylor to a new position, was obligated to make similar efforts for Taylor or to show why he was not similarly situated to younger employees once it undertook to relocate the younger employees.

▬▬▬ Canteen argues that Taylor was not similarly situated to the younger employees it relocated because he was a vending division management employee and all but one of the individuals who were transferred or recalled were employed in the food services division.[2] Canteen also submits that Taylor was not offered future employment with the company because: (1) he was not qualified and did not apply for any available positions; and (2) Canteen has an age-neutral policy of terminating employees who are unable to return to their jobs from short-term disability leave.

▬▬▬ Canteen's submission may be viewed as a challenge to Taylor's ability to establish a prima facie case or as an explanation of a nonpretextual business justification for its action. Accordingly, "[r]ather than make our inquiry more difficult through the rigid and

---

**2.** The only non-food services management employee who retained a job with Canteen was James Deck. Taylor asks the court to examine the treatment of Deck as an "example" of disparate treatment. However, a plaintiff cannot inflate his evidence by saying the one instance of discrimination for which he has documentation is but an "example" of a widespread practice. Moreover, the example of Deck's treatment is not evidence of disparate treatment. Deck was employed as a route supervisor until December 1983 when his position was eliminated. Deck applied for and was transferred to a clerical position that had been created in response to

Canteen's moving its general ledger accounting functions from its corporate offices in Chicago to regional offices throughout the country. Deck continued to hold the clerical position until March 1985 when he was given a position as a food services supervisor and a new employee was hired to fill his clerical position. Deck therefore was not similarly situated because his position was eliminated a year before the RIF that resulted in the elimination of Taylor's position and the clerical position that Deck was given in 1983 was created due to unique needs existing at that time.

mechanistic application of the *McDonnell Douglas* burden-shifting analysis," we shall analyze the case by "shifting our focus as appropriate" from Taylor's prima facie burden to his burden of showing pretext. *See Holmberg*, 901 F.2d at 1391. "Where [Taylor] has not met [his] burden of showing that [Canteen's] explanations are merely a pretext for discrimination, it is not necessary to decide whether [he] also established a prima facie case." *Id.*

We begin our analysis with Canteen's explanations for its treatment of Taylor. We note that our case law indicates that an employee must do more than show a general interest in obtaining some job in order to establish pretext. *See Konowitz*, 965 F.2d at 234 (noting that there was no inference of discrimination when plaintiff did not apply for, or inform company of his interest in, the jobs for which he claimed he was qualified) (citing *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir.1985) (considering whether plaintiff established prima facie case and stating that the employee must do more than show "a general interest in obtaining some job"), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986)). In this case, Taylor concedes that he did not apply for a specific position with Canteen. Although he expressed a general willingness to work, our case law suggests that, as a general proposition, such sentiment is insufficient. Consequently, Taylor would appear unable to show that Canteen's reasons for not recalling or transferring him are pretextual. However, under Taylor's version of the October 22, 1984 meeting, which we must accept for purposes of reviewing the district court's grant of summary judgment, he was not given any options other than retirement, i.e., he was never told what positions might be available or that Canteen would consider him for those positions. Given these circumstances, our case law supports the view that Taylor should not be penalized for failing to apply for a specific job as long as the record suggests, as a reasonable inference, that he would have applied for specific positions had he known of their availability. *See Loyd v. Phillips Bros.*, 25 F.3d 518, 523 (7th Cir. 1994); *Box*, 772 F.2d at 1376–77 (noting that defendant had no system to ensure that all interested employees applied for jobs and stating that, in such situations, an employee can establish a prima facie case "by showing that, had she known of an ... opening, she would have applied"); *cf. International Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66, 97 S.Ct. 1843, 1870, 52 L.Ed.2d 396 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.").

Nevertheless, we cannot accept Taylor's contention that Canteen's reasons for discharging him are pretextual. The record supports Canteen's submission that, at the time of Mr. Taylor's termination, there were no jobs available for which he was qualified. Taylor identifies three positions for which he claims he was qualified and into which younger employees transferred following the RIF. In March 1985, Canteen had openings for two food services management positions and one clerical position. Barbara Collins, a food services supervisor who had been laid off during the RIF, was recalled to occupy one of the food services management positions and James Deck was transferred from his clerical position to the other food services position; the clerical job that Deck vacated was filled by a new employee. Significantly, however, none of these positions was available either at the time Taylor's position was eliminated, November 1, 1984, or at the time his short-term disability benefits expired, February 13, 1985.

Although Taylor contends, in reliance upon various company documents, that he remained employed at Canteen until October 9, 1985, we agree with the district court that this argument is without reasonable foundation in the record. There is no dispute that Taylor was informed on October 22, 1984 that his position was being eliminated effective November 1, 1984 and that there were no available positions to which he could be transferred. Based upon the November 1, 1984 termination date, Taylor cannot show that Canteen's explanation for his treatment is pretextual; the fact that various jobs be-

came available several months after November 1, 1984 in no way indicates that similar positions were open or available at that time. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1083 (11th Cir.1990).

Even if, in the alternative, we view February 13, 1985 as Taylor's termination date, we must conclude that Canteen did not discriminate against him in failing to consider him for any positions at that time. Although his short-term disability had expired, he was not able at that time to present himself as able to perform any position at Canteen. The record does not establish that he was able to present a release from his physician. Only a single letter of a psychologist, not a physician, suggests that Taylor might be able to perform any work. Even that letter can most charitably be described as non-specific, especially with respect to Mr. Taylor's capacity for employment at Canteen. Moreover, physicians examining Taylor in April 1985 concluded that he had been continuously and totally disabled since October 30, 1984. In light of these facts, Taylor cannot establish any genuine issue with respect to his ability to perform the tasks required for the March 1985 positions at the time he was terminated or at the time those positions became available. For the same reason, he cannot contend plausibly that Canteen had an obligation to treat him in the same way as a medically-fit employee with respect to the lay-off list for future employment.

In sum, there is no evidence of record to support the conclusion that Taylor either applied, or could have applied, for available jobs for which he was qualified. *Cf. Box,* 772 F.2d at 1376–77. Because Taylor has made no showing that he was as qualified as the people actually selected for the three positions he identified, he is unable to show that these younger employees were treated more favorably than he and thus unable to establish a prima facie case. *See Holmberg,* 901 F.2d at 1392–93 ("[Plaintiff] has not come forward with evidence that would show he was qualified to fill the alternative positions given to the four employees or even that [Canteen] had positions available for persons with her qualifications."). For the same reasons, Taylor is unable to show that Canteen's

proffered justification for not recalling him to fill those positions or for not placing him on a lay-off list were pretextual. *See Komel v. Jewel Cos.,* 874 F.2d 472, 474 (7th Cir.1989).

**B.** *Oral Contract*

Under Illinois law, which governs Taylor's claim, employment contracts without fixed terms are presumed to be terminable at will by either party. *Duldulao v. St. Mary of Nazareth Hosp. Ctr.,* 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987); *Johnson v. George J. Ball, Inc.,* 248 Ill. App.3d 859, 187 Ill.Dec. 634, 637, 617 N.E.2d 1355, 1358 (1993); *see also Eastman v. Chicago Cent. & Pac. R.R.,* 930 F.2d 1173, 1177 (7th Cir.1991); *Tolmie v. United Parcel Serv., Inc.,* 930 F.2d 579, 580 (7th Cir.1991). In order to overcome the presumption of "at will" employment, an employee bears the burden of showing that the parties contracted otherwise. *Duldulao,* 106 Ill.Dec. at 12, 505 N.E.2d at 318; *see also Eastman,* 930 F.2d at 1177; *Tolmie,* 930 F.2d at 580. If, as in Taylor's case, the alleged contract is based upon oral assurances, the plaintiff must establish that the offer was "clear and definite" and supported by adequate consideration. *Kercher v. Forms Corp. of Am., Inc.,* 258 Ill.App.3d 743, 196 Ill.Dec. 813, 816, 630 N.E.2d 978, 981 (1994); *Koch v. Illinois Power Co.,* 175 Ill.App.3d 248, 124 Ill.Dec. 461, 464, 529 N.E.2d 281, 284 (1988); *Ladesic v. Servomation Corp.,* 140 Ill.App.3d 489, 95 Ill.Dec. 12, 13, 488 N.E.2d 1355, 1356 (1986).

Taylor argues that a "clear and definite" promise was made during the course of two meetings that Taylor had in 1978 with the district manager, Donald Bross. At the first meeting, Bross offered Taylor the maintenance supervisor position and discussed with him the increased pay and benefits that the position provided. According to Taylor, when he told Bross that he was hesitant about accepting the position because he would lose his union protections, Bross told him "you have nothing to worry about." Taylor did not accept the position at that time, but thought about the offer during his scheduled vacation. At a second meeting after Taylor's return, he again questioned Bross about the job security that the new

position provided, in particular, the possibility that he would accept the position and then be told to leave. According to Taylor, Bross told him that he should not be concerned because there was no chance the company would fire him as soon as he gave up his union benefits. Bross also said that Taylor could work for Canteen as a maintenance supervisor for "as long as [Taylor] wished" and he would have the job "until he retired or decided he did not want the job anymore." After Bross' assurances, Taylor accepted the position.

Although Illinois case law on this issue is certainly not a seamless garment, we believe that, given the language used and the context in which Bross' statements were made, the alleged promise in this case was sufficiently clear and definite to preclude summary judgment.[3] Bross' statements were more "than assurances of goodwill or the hope for continued association." *Farr v. Continental White Cap, Inc.*, 774 F.Supp. 522, 524 (N.D.Ill.1991) (citation omitted). This, however, is not the end of our inquiry. Taylor must also allege that the contract was supported by adequate consideration. Again, the Illinois cases present an array of analyses, regarding the conditions under which relinquishing present employment or alternative job offers constitutes adequate consideration. Additional guidance from the Illinois Supreme Court is sorely needed.

At the outset, we note that the mere exchanging of a union job for a non-union position within the same company is considered incidental to accepting the new position and, absent more, does not provide adequate consideration to form a binding contract. *Koch*, 124 Ill.Dec. at 465–66, 529 N.E.2d at 285–86. In *Koch* the court found that:

> The plaintiff here ... did not give up anything of value when relinquishing his position in exchange for an alleged union contract. The plaintiff in this case simply examined the union and non-union jobs and elected to accept the non-union supervisory position. He did not give up anything of value. His action did not provide sufficient consideration to support his alleged oral contract with [the defendant].

*Id.* at 465, 529 N.E.2d at 285; *see also Tolmie*, 930 F.2d at 582 (stating, following *Koch*, with respect to individual who left position covered by union collective bargaining agreement to accept managerial position, that simply forgoing union position was not adequate consideration). These cases make clear that, absent special circumstances, the mere relinquishment of a prior position, which must be given up in order to accept the new offer, will not support anything more than an at-will relationship.

3. *See, e.g., Farr v. Continental White Cap, Inc.*, 774 F.Supp. 522, 524 (N.D.Ill.1991) (determining that plaintiff's allegations that he was told he could stay as long as he desired alleged clear and definite terms sufficient to withstand motion for summary judgment); *Molitor v. Chicago Title & Trust Co.*, 325 Ill.App. 124, 59 N.E.2d 695, 697–98 (1945) (holding that trial court erred in granting jnov, and indicating that statement by employer to employee that "there is no reason why you couldn't have a job here the rest of your life" and that "[y]ou can rely on [job] being permanent" stated clear and definite terms of an enforceable contract); *see also Strzelecki v. Schwarz Paper Co.*, 824 F.Supp. 821, 824, 828 (N.D.Ill. 1993) (concluding that plaintiff's allegations that he was asked to purchase and run subdivision and told he could stay at company "for as long as he wanted, for at least twenty more years," alleged clear and definite terms sufficient to withstand motion to dismiss); *Lamaster v. Chicago & Northeast Ill. Dist. Council of Carpenters Apprentice & Trainee Program*, 766 F.Supp. 1497, 1503–04 (N.D.Ill.1991) (reasoning that plaintiff's allegations that he was promised that if he accepted position as a director he could hold position for as long as he chose to do so alleged clear and definite terms sufficient to withstand motion to dismiss); *Kula v. J.K. Schofield & Co.*, 668 F.Supp. 1126, 1128, 1132–33 (N.D.Ill.1987) (holding that plaintiff's claim that he was told employment was for "as long as he continued to perform satisfactorily" alleged clear and definite terms sufficient to withstand motion to dismiss). *But see Wilder v. Butler Mfg. Co.*, 178 Ill.App.3d 819, 128 Ill.Dec. 41, 42–43, 533 N.E.2d 1129, 1130–31 (1989) (concluding that statements by personnel manager to employee that "you're the first woman here. There's no problem. You have a permanent job" did not state clear and definite terms of an enforceable contract); *Titchener v. Avery Coonley Sch.*, 39 Ill.App.3d 871, 350 N.E.2d 502, 506–07 (1976) (holding that statement by employer that "your future is here at [defendant] and I hope it will be for many years to come" did not state clear and definite terms of an enforceable contract).

This does not end the inquiry, however. The *Koch* rule may be rendered inapplicable by the presence of certain circumstances in the bargaining process. The Illinois courts have recognized that, in certain cases, foregoing other employment is not merely incidental to accepting a new position. It appears that, if the employee's forbearance is a "specially bargained for detriment," *see Titchener v. Avery Coonley Sch.*, 39 Ill. App.3d 871, 350 N.E.2d 502, 507 (1976), or causes the employee to suffer a "particular detriment," *see Heuvelman v. Triplett Elec. Instrument Co.*, 23 Ill.App.2d 231, 161 N.E.2d 875, 877–78 (1959), the employee's termination of present employment may be sufficient consideration to support a promise of employment. Under these circumstances, when the termination of prior employment is specially bargained for, it can be said that the employee has surrendered something of value in exchange for the promise of employment.

The exact circumstances in which this principle applies are unclear. In *Titchener*, the court found a lack of "special bargained for detriment" on the part of the plaintiff, a schoolteacher who left a tenured position in another district to work for the defendant. Significantly, however, the plaintiff in *Titchener* initiated the contact with the defendant, leading the court to observe that the plaintiff "sought the employment and there are no statements in the affidavits to show that [defendant] importuned [plaintiff] to leave her tenured position in the LeGrange school system." *Titchener*, 350 N.E.2d at 507. The implication of this statement is that, in cases in which the plaintiff was lured away from a position with a promise of permanent employment, sufficient consideration may be found. *See also Molitor v. Chicago Title & Trust Co.*, 325 Ill.App. 124, 59 N.E.2d 695 (1945) (where plaintiff agreed to leave prior position only on the condition that his new job be permanent, relinquishment of prior position was "bargained for"

and thus sufficient consideration); *Lamaster v. Chicago and Northeast Ill. Dist. Council of Carpenters Apprentice and Training Prog.*, 766 F.Supp. 1497, 1503 (N.D.Ill.1991) ("The element of bargained-for exchange is the essence of consideration").

In the case before us, an examination of the record convinces us of the need for additional factual determinations by the district court as to whether the circumstances of the bargaining process warrant departure from the rule set forth in *Koch*. The record supports the view that Canteen approached Taylor for the supervisor's position and that the assurances given by Bross were given in response to Taylor's expression of concern over losing his union benefits. We note, however, that Mr. Taylor's counsel suggests the existence of a factual question as to whether Taylor accepted the position before he was given assurances by Bross that he could work as long as he wanted the job or until he retired.[4] There is also a factual question as to the proper inferences to be drawn from Taylor's repeated testimony that he was reluctant to accept the position of supervisor and leave the bargaining unit without job security and that "[y]ou don't just give away 24 years of seniority for nothing." Tr. at 108. The proper course, therefore, is to remand Taylor's state law claim to the district court for a determination of whether his relinquishment of union benefits was specially bargained for so as to constitute sufficient consideration for the promise of employment.

We are cognizant that we may affirm the judgment of the district court on the basis of any ground supported by the record. *See Flynn v. Sandahl*, 58 F.3d 283, 289 (7th Cir.1995); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773 (7th Cir.1995). Canteen's reliance on the Illinois Statute of Frauds,[5] however, does not provide sufficient grounds for affirmance. There is considerable ambiguity in the decisions of the Illinois

---

4. *See* Repl.Br. at 19–20; Tr. at 30–32, 38–39, 104–08.

5. Under the Illinois Statute of Frauds, oral agreements that are not capable of being fully performed within one year are unenforceable "un-

less the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith." Ill.Rev.Stat. ch. 59 § 1.

Appellate Courts concerning which oral promises of employment for an indefinite duration are capable of performance in one year. We are persuaded, however, by Judge Moran's thoughtful analysis in *Lamaster*, 766 F.Supp. at 1506–1509, which appears to best harmonize the seemingly conflicting Illinois precedent. Under that approach, a court must examine the precise terms of the promise to determine whether the occurrence of a stated contingency would complete performance of the contract, in which case the promise would be outside the Statute of Frauds, or whether such occurrence would frustrate the performance of the contract, in which case the promise would be within the statute's one-year provision. *Id.*

Where, as here, the promise of employment is cast in terms of lasting as long as the employee wants the job, the promise is capable of performance within one year and thus outside the Illinois Statute of Frauds. *See Lamaster*, 760 F.Supp. at 1508–09 (holding promise of employment "for as long as [employee] wanted to hold th[e] position" to be outside Statute of Frauds); *accord Farr*, 774 F.Supp. at 524 (promise that employee could remain with company as long as he desired); *Martin v. Federal Life Insurance Company*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 150, 440 N.E.2d 998, 1005 (1982) (promise to retain employee until he retired from all business pursuits or no longer wished to be employed, assuming continued satisfactory performance). Following this approach, Canteen's alleged promise to Taylor falls outside the Statute of Frauds.

### Conclusion

Taylor has failed to show that Canteen's proffered explanation for the elimination of his job and failure to retain Taylor as an employee was pretextual and discriminatory intent more likely motivated Canteen's actions. Accordingly, summary judgment on Taylor's ADEA claim was appropriate.

Taylor, in support of his contract and promissory estoppel claims, has alleged a promise that is sufficiently clear and definite. On the record before us, however, there is a genuine issue of triable fact as to whether such a promise was made. Additionally, if the promise was made, it must be determined, with respect to the contract claim, whether that promise was given as part of a bargained-for exchange for Mr. Taylor's relinquishment of his union security.

AFFIRMED in part, REVERSED and REMANDED in part.