**Barbara WASHINGTON, Plaintiff,**

**v.**

**STATE OF ILLINOIS, DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Defendant.**

**No. 94 C 3407.**

United States District Court, N.D. Illinois, Eastern Division.

March 26, 1996.

Gerald A. Goldman, Arthur R. Ehrlich, Jonathan C. Goldman, Law Offices of Gerald A. Goldman, Chartered, Chicago, IL, for plaintiff.

Marina Popovic, Illinois Attorney General's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Barbara Washington ("Washington") sues defendant Illinois Department of Children and Family Services ("DCFS") for race and sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and for age discrimination under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 623 *et seq.* She alleges that DCFS discriminated against her by eliminating her position and transferring her to a less desir-

able location. DCFS moves for summary judgment. For the reasons that follow the Court must grant the pending motion.

## RELEVANT FACTS

■ The following recitation of facts is drawn from the parties' Local General Rule 12 statements provided to the Court in connection with DCFS's pending motion for summary judgment.[1] Washington began working at DCFS in November 1960. (Pl.'s Ans. Def.'s Interrogs. ¶ 1). She began as a Clerk Typist and progressed through a number of positions over the course of her employment. (*Id.*). In October 1984, she attained the position of "Executive III" in DCFS's Chicago office of the Office of Management Services—working specifically in the Cook County Business Office—and she remained in that position until August 1992, when she grudgingly accepted a transfer to DCFS's Aurora, Illinois office in lieu of being laid off. (Def.'s Facts ¶¶ 3, 12). In her Executive III capacity, Washington had myriad responsibilities included supervision, evaluation, planning and coordination of the following business management functions: accounting, budgeting, vouchering, contracting, purchasing, security, property control, building maintenance and other business related functions as required. (Def.'s Facts ¶¶ 9, 14). Washington received superior evaluations of her work.[2] (Def.'s Ex. D).

1. Local General Rule 12(M)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue." UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS LOCAL GENERAL RULE (hereinafter "Local Rule") 12(M)(3). The movant's statement must contain "specific references to affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth." *Id.* DCFS's statement shall be cited as "Def.'s Facts ¶__." Similarly, Local Rule 12(N)(3)(a) requires the non-moving party to file a concise response to the movant's statement including, in the case of any disagreement, specific references to supporting materials. Washington's response shall be cited as "Pl.'s Facts ¶__." Local Rule 12(N)(3)(b) authorizes the non-moving party to submit a statement of "additional facts that requires the denial of summary judgment"; pursuant to Local Rule 12(M), the moving party may then submit a reply to the non-moving party's additional facts. Washington's statement of ad-

ditional facts shall be cited as "Pl.'s Add'l Facts ¶__." and DCFS's reply shall be cited as "Def.'s Resp. Add'l Facts ¶__." All properly supported material facts set forth in either party's statement (*i.e.*, Def.'s Facts or Pl.'s Add'l Facts) are deemed admitted unless properly controverted. *See* Local Rule 12(M) and 12(N)(3)(b); *see also Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir.1994); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994); *Stewart v. McGinnis*, 5 F.3d 1031 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994). Moreover, the mere denial of a particular fact without "specific references to the affidavits, parts of the record, and other supporting materials" is insufficient, and, where a properly supported factual assertion is met with such a naked denial, the fact may be deemed admitted. *Flaherty*, 31 F.3d at 453.

2. In addition to high marks on her normal evaluation, Washington was named a "Manager of the Year" in 1987.

Washington reported to John Caldwell, the Executive IV Administrator for Management Services. (Def.'s Facts ¶ 6). The record reflects that Caldwell oversaw four different units within the Management Services division: (1) Business Office; (2) Data Control and Benefits Determination; (3) Contracts and Grants; and (4) Development/Analysis. (Putting Dep. at 8–9; Def.'s Ex. G, Organizational Chart). Accordingly, there were three other employees at Washington's level of management working under Caldwell's supervision in Management Services. (Id.). Robert Trine, who also held the title of Executive III, supervised data control and medical benefits; John Targonski, a Child Welfare Administrator III, supervised contracts and grants; and Amos Gregory, a Management Systems Specialist, supervised development/analysis. (Def.'s Facts ¶ 14; Def.'s Ex. G).

In July 1992, DCFS implemented a reduction in force ("RIF") and reorganization necessitated by a legislative cut in operations funding and a judicial mandate to reduce its worker case load. (Def.'s Facts ¶ 8). Moreover, a consent decree (relating to supervisor/worker ratios) required the elimination of administrative positions as opposed to direct service positions because elimination of the latter would have led to noncompliance with the consent decree. (Def.'s Facts ¶¶ 16, 17). The RIF and reorganization at DCFS involved cuts in management positions affecting people of many races and both genders, including at least 24 management positions in Cook County. (Putting Aff. ¶ 3; see also Def.'s Facts ¶ 29). Within Cook County's Office of Management Services, Washington's position was targeted for elimination. Robert Trine, the Executive III from the Data Control and Benefits Determination unit of Management Services, took over Washington's support services duties. (Def.'s Facts ¶ 20). Washington's former supervisor, John Caldwell, absorbed her other duties. (Id.).

Washington received official notification on July 13, 1992 that her position was being eliminated due to a reduction in force caused by lack of funds. (Def.'s Facts ¶ 7; Def.'s Ex. B, Layoff letter). When she inquired about other available positions at DCFS, she was offered two possible jobs in Cook County. Both offers were revoked when she failed to respond in a sufficiently timely manner.[3] (Pl.'s Add'l Facts ¶ 2; Def.'s Resp. Add'l Facts ¶ 2). Washington's additional requests for a new position led only to proposed DCFS jobs outside of Cook County. Washington ultimately accepted a "Child Welfare II" position in Aurora, Illinois because it was the least distant location and relocating was not a viable option. (Pl.'s Add'l Facts ¶ 2). After a year of working in Aurora, Washington was able to transfer back to Chicago where she filled a vacant Child Administrator II position. (Pl.'s Add'l Facts ¶ 3).

As evidence of the alleged discriminatory intent underlying her adverse treatment, Washington contrasts her fate with that of the other manager-level employees working under John Caldwell in the Cook County Management Services office. Robert Trine, John Targonski and Amos Gregory are all white males and are all younger than Washington. All of them have less seniority than Washington. Yet none of them underwent a change in employment status as a result of the RIF.

DCFS Director of Personnel Thomas Putting ("Putting") identified the following factors as being relevant to the decision to RIF Washington's position: efficiency of operations, span of control (supervisor/worker ratio), reorganization and lack of funds. (Def.'s Facts ¶ 19; Putting Aff. ¶ 8). In addition, during his deposition Putting stated that decisions as to which positions would be eliminated were guided by a "formula" that targeted management positions with "two or less subordinate staffs" as positions warranting a closer look. (Putting Dep. at 15–16). When questioned about the specific reasons for eliminating Washington's position, Putting testified:

---

3. The record reflects that Washington was given "multiple opportunities" to accept 2 positions in Cook County, however, she did not respond to these offers in a timely fashion claiming that she needed to consult with her attorney prior to making a decision. (See Putting Aff. ¶ 6).

In taking a look at the functions that she supervised compared with the importance of the complexity of what she and others within the business office supervised, that it was determined that hers, that the functions that she supervised were easily absorbed into other areas.

(*Id.* at 18). In response to questions by plaintiff's counsel, Putting noted that budgeting and accounting, and support services were the two subordinate functions that Washington supervised and that support services was easily transferable to another supervisor because "[i]t's not a highly complex function so, therefore, it could be absorbed by someone else." (*Id.* at 18–19). In her response to DCFS's statement of material facts and supporting materials, Washington denies that Putting's testimony reflects how the layoff decisions were actually made. However, Washington provides no support for this denial. (Pl.'s Facts ¶ 15). Alternatively, Washington offers her own appraisal as to whether her position was any more or less appropriate for elimination. For instance, Washington states:

> The Plaintiff's duties were not more easily transferable to another supervisor. At the very least, it was just as easily transferable as Robert Trine's duties, Amos Gregory's duties or John Targonski's duties. (Plaintiff's Exhibits C, D, E; Defendant's Exhibit E). Each is responsible for supervising other employees. (Plaintiff's Exhibits C, D, E; Defendant's Exhibit E).[4]

(Pl.'s Facts ¶ 18).

DCFS moves for summary judgment contending that (1) Washington cannot establish a prima facie showing of discrimination and (2) there is no genuine issue of material fact as to whether the nondiscriminatory reason it has proffered for eliminating Washington's position is a pretext for discrimination.

## ANALYSIS

### Summary Judgment Standards

 Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court must view all evidence in a light most favorable to the nonmoving party, and draw all inferences in the nonmovant's favor. *Wolf v. Buss America, Inc.,* 77 F.3d 914, 918 (7th Cir.1996); *Taylor v. Canteen Corp.,* 69 F.3d 773, 779 (7th Cir. 1995). However, if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Unterreiner v. Volkswagen of America, Inc.,* 8 F.3d 1206, 1212 (7th Cir. 1993). In determining whether a genuine issue exists, the court "must view the evidence presented through the prism of the substantive evidentiary burden." *Liberty Lobby,* 477 U.S. at 254, 106 S.Ct. at 2513. In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Id.* at 255, 106 S.Ct. at 2513–14.

### Washington's Discrimination Claims

 Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against their employees on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e et seq. Title VII plaintiffs have the ultimate burden of proving that adverse actions taken against them were the result of such discrimination.[5] Plaintiffs can

---

4. [This Court's footnote.] The citations here are to position descriptions for "Child Welfare Administrator III [Contracts & Grants]" (Pl.'s Ex. C), "Management Systems Specialist" (Pl.'s Ex. D; Def.'s Ex. E), and a "position audit report" of Washington's position (Pl.'s Ex. E).

5. Washington also asserts an age discrimination claim under ADEA. The analysis of an age discrimination claim is equivalent in all material respects to the analysis of a Title VII claim. *See Futrell v. J.I. Case,* 38 F.3d 342, 345–46 (7th Cir.1994) (setting out the *McDonnell Douglas*

carry their burden in one of two ways. First, they may present direct or circumstantial evidence of discriminatory intent (*i.e.,* inappropriate remarks made by the employer). *Loyd v. Phillips Bros., Inc.,* 25 F.3d 518, 522 (7th Cir.1994). Second, they may employ the *McDonnell Douglas* burden-shifting method of proof, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to raise an inference of illegal motive. *Loyd,* 25 F.3d at 522; *Sample v. Aldi Inc.,* 61 F.3d 544, 547 (7th Cir.1995); *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736–37 (7th Cir.1994). "In the case of either method of proof the evidence must, in the final analysis, demonstrate that race [or age or sex] was a determining factor, in the sense that the employee would not have been laid off 'but for' the employer's motive to discriminate against the employee." *Williams v. Williams Electronics, Inc.,* 856 F.2d 920, 923 (7th Cir.1988) (citations omitted). Washington has chosen to use the *McDonnell Douglas* framework to prove her claim against DCFS. *See* Pl.'s Resp. at 3.

■ To state a prima facie case of discrimination under the *McDonnell Douglas* method, Washington must establish that (1) she is within a protected class; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably. *Sample,* 61 F.3d at 548; *Taylor v. Canteen Corp.,* 69 F.3d 773, 780 (7th Cir.1995); *Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir.1994); *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1132 (7th Cir. 1994). If Washington succeeds in making this prima facie showing, a rebuttable presumption of discrimination arises and the burden of production shifts to DCFS to articulate a legitimate nondiscriminatory justification for its action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If DCFS meets its burden of production, the presumption is dissolved and the burden shifts back to Washington to prove that the

proffered reasons are a pretext for discrimination. *Id.* at 256, 101 S.Ct. at 1095. Pretext may be established by showing either that a discriminatory intent more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *See id.* at 253, 101 S.Ct. at 1093–94.

DCFS has pressed alternate grounds for asserting that its motion for summary judgment must be granted. First, it claims that Washington cannot satisfy the fourth element of her prima facie case—*viz.,* showing that similarly situated non-protected employees were treated more favorably. Alternatively, DCFS claims that, even if Washington has satisfied all four elements of her prima facie case, she has not produced evidence from which a reasonable factfinder could infer that DCFS's proffered reasons for her layoff were a pretext for intentional discrimination. Because the Court agrees with this second contention, summary judgment is granted.

*Pretext*

■ The parties disagree as to whether Washington has established a prima facie showing of discrimination. However, because we find that DCFS has met its burden of articulating a legitimate reason for its decision to eliminate Washington's position, we proceed directly to examine whether Washington has adduced sufficient evidence to raise a triable issue as to pretext. *See E.E.O.C. v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 149 (7th Cir.1996) (noting that the "court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a *prima facie* case" and "[t]o expedite the process it may be preferable to get past the *prima facie* case and examine the pertinent issue of whether there was discrimination in a job action"); *see also Sample v. Aldi Inc.,* 61 F.3d 544, 548 (7th Cir.1995) (declining to address whether the plaintiff had established a prima facie case because

methodology in an ADEA action). Therefore, for ease of exposition and to avoid needless redundancy, this Opinion shall only speak in terms of Washington's sex and race claims; however, the

Court's analysis and discussion should be understood to apply with equal force to Washington's age discrimination claim.

the defendant employer had met its burden of articulating a nondiscriminatory justification); *Cecilio v. Allstate Ins. Co.*, 908 F.Supp. 519, 529 (N.D.Ill.1995) (proceeding directly with pretext analysis). This approach of dispensing with an analysis of the prima facie showing follows, of course, from the well recognized principle that "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *see also Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 135 (7th Cir.1985) (citing *Aikens* for the proposition that "the prima facie threshold is no longer a relevant issue once the defendant has come forward with evidence of legitimate reasons for its actions that would rebut a prima facie showing of discrimination").

 DCFS asserts that the elimination of Washington's position was the result of a reorganization and reduction of its managerial employees necessitated by a legislative cut in funding.[6] Def.'s Facts ¶ 8. When deciding which positions to cut, DCFS personnel officers assessed how important the position's functions were, how many subordinates the position was responsible for, and how easy it would be to assimilate the functions of the position into other areas. Def.'s Facts ¶ 15. Moreover, DCFS's Chief Personnel Officer Thomas Putting explained that a determination had been made that Washington's duties could be easily absorbed into other areas. Putting Dep. at 18. These explanations satisfy DCFS's burden of production. Accordingly, we turn to consider Washington's evidence of pretext.

 We note at the outset that once an employer has articulated a legitimate, nondiscriminatory reason for an adverse employment action, the plaintiff "must raise some doubt as to the genuineness of the given reasons" for the adverse action. *Anderson v. Stauffer Chemical Co.*, 965 F.2d

397, 403 (7th Cir.1992). It is not enough that the plaintiff disagrees with her employer's decision; she must show that her employer did not "honestly believe[ ] in the reasons it offer[ed]." *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992); *see also Wolf v. Buss America, Inc.*, 77 F.3d at 919 ("It is not sufficient ... for the employee to show that the employer acted incorrectly or undesirably by firing him; the employee must show that the employer did not honestly believe in the reasons it gave for firing him."). In this regard, we note that the Seventh Circuit has reiterated on numerous occasions that federal courts presiding over discrimination suits "do[ ] not sit as a super-personnel department that re-examines an entity's business decisions." *Wolf v. Buss America, Inc.*, 77 F.3d at 920; *Courtney v. Biosound, Inc.*, 42 F.3d 414, 425 (7th Cir.1994) (quoting *Weihaupt v. American Med. Ass'n*, 874 F.2d 419, 429 (7th Cir. 1989)); *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 151 (7th Cir.1994); *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988); *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). Accordingly, "no matter how medieval a firm's practices, no matter how high handed its decisional process, no matter how mistaken the firm's managers [the antidiscrimination statutes do] not interfere." *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 772 n. 13 (7th Cir.1994) (internal quotations and citations omitted).

 Thus, it is apparent that Washington's first argument for establishing pretext—namely, her protestations that the functions of other employees could have been absorbed as easily as hers—is misplaced. Washington must do more than show that DCFS was mistaken or unfair in selecting her position for elimination, *see Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1422 (7th Cir.1992); *see also Wolf v. Buss America, Inc.*, 77 F.3d at 919–20, rather, she must adduce evidence that DCFS's decision-makers did not, in fact, harbor the belief that her

---

6. There is no dispute that DCFS reduced its workforce in 1992. The record indicates that at least four other mid-level management positions

in Cook County were targeted for lay off in the summer of 1992, positions held by two white males and two black females. Def.'s Facts ¶ 29.

position was most readily absorbed by others (or she must adduce evidence that the belief was not held in good faith). Whether the decision-makers' perceptions were accurate or not is not determinative; rather, the issue is whether those perceptions were genuine. *Cf. Lindsey v. Baxter Healthcare Corp.*, 757 F.Supp. 888, 894–95 (N.D.Ill.1991), *aff'd and rev'd on other grounds*, 962 F.2d 586 (7th Cir.), *cert. denied*, 506 U.S. 967, 113 S.Ct. 442, 121 L.Ed.2d 361 (1992). Washington has adduced no evidence with respect to this issue.

Washington offers two other attacks on the bona fides of DCFS's explanation for the elimination of her position. We address her arguments in turn. Of course, although by necessity we examine Washington's arguments individually, the Court's ultimate determination is based on a review of Washington's arguments and evidence viewed in their totality.

First, Washington looks to Central Management Services' ("CMS") guidelines for layoffs, which apply DCFS. *See* Ill.Adm. Code tit. 80, § 302.520. This section of the Illinois Administrative Code suggests that layoff decisions within "organizational units" should consider performance records and seniority.[7] Pl.'s Ex. L. Washington maintains

that these factors were not considered in the decision to eliminate her position. The Court finds § 302.520 to be, at most, of marginal probative value. Section 302.520 does not purport to *require* that performance or seniority (more specifically, the regulation speaks of continuous service) be given determinative effect in layoff decisions. To the contrary, the regulation merely requires that an explanation be given when a proposed layoff is not in order of continuous service. *See* § 302.520(b)(4). Thus, Washington simply cannot claim that DCFS somehow circumvented this regulation in not adequately weighting her years of continuous service or excellent performance.[8]

■ Second, Washington attacks the purported formula described by Putting which, she says, targeted managers with two or less subordinate staffs and whose duties were easily absorbed by others. She considers this proffered formula as further evidence of pretext because, while she had only two subordinate staffs, other employees who were laid off had more than two.[9] *See* Pl.'s Ex. G, H. Further, Washington points to Targonski and Gregory, who, like herself, had two or less subordinate staffs, yet kept their jobs. *See* Pl.'s Ex. A. However, Washington's at-

---

7. Section 302.520 provides in full:
 Section 302.520 Indeterminate Layoff Procedure
 a) An operating agency may request the indeterminate layoff of an employee because of lack of funds, material change in duties or organization or lack of work or the abolition of a position for any of these reasons. Based on class, agency, county or other designation, an indeterminate layoff shall be within organizational units justified by operations and approved prior to the layoff by the Director.
 b) A proposed indeterminate layoff is subject to the approval of the Director before becoming effective and shall include the following in the organizational unit in which the indeterminate layoff is proposed.
 1) a list of all employees showing status and total continuous service;
 2) a listing of those employees to be laid off;
 3) performance records of all employees affected by layoff plan;
 4) an explanation of any layoff not in order of continuous service;
 5) an explanation of the organizational unit selected, reflecting agency, facility, geographical, operational and other elements deemed relevant by agency head.
 Ill.Adm.Code tit. 80, § 302.520.

8. The Court also notes that it is not at all clear that the employees with respect to whom Washington compares herself (*e.g.*, Messrs. Trine, Targonski, or Gregory) were in the same "organizational unit." The regulations do not define the term and the parties disagree as to its meaning. Both parties have substituted the term "functional unit" for "organizational unit," and argue over whether or not these employees should be considered functional equivalents. Given the procedural posture of this case, the Court must resolve this factual uncertainty in favor of Ms. Washington. However, as we explain above, this does not take her very far.

9. It is noteworthy that, while Washington uses these two employees to buttress her argument that the formula was a pretext for discrimination, Chris Benson is a white male. Indeed, Washington only seems to weaken her argument by urging the court to look outside of the Management Services office, as there is no discernable pattern of race or sex among those who were subject to the RIF.

tempt to look to this element of the "formula" as evidence of pretext clearly misrepresents the nature of Putting's testimony. What Putting referred to as a "formula" in his deposition was not even remotely described as a bright-line decision-making tool. To the contrary, Putting clearly stated that it merely provided a means for identifying positions warranting a closer look. There were several other factors that were expressly considered—including the importance of the position, ease of absorbing the position's duties, and the efficiency of operations—making the number of subordinate staffs only one factor among many. Thus, it is neither surprising nor suspicious, that the "number of subordinate staffs" criterion does not predict with pin-point accuracy which positions were ultimately eliminated. Furthermore, although Washington raises questions as to the "number of subordinate staffs" criterion, she makes absolutely no evidentiary showing with respect to Putting's testimony that her position was slated for elimination because it was determined that her responsibilities could be absorbed by other positions most readily. It is insufficient for Washington to call into question only a portion of DCFS's proffered justification while leaving the remaining justifications uncontroverted.[10] *See Russell v. Acme–Evans Co.*, 51 F.3d 64, 69 (7th Cir.1995) ("The fact that some of [the employer's proffered] reasons were successfully called into question by [the employee's evidence] does not defeat summary judgment if at least one reason for [the adverse employment action] stands unquestioned."); *Wolf v. Buss America, Inc.*, 77 F.3d at 919–20. Thus, the Court concludes that no reasonable factfinder could infer pretext based on this misguided argument.

■ Even when all of the evidence presented by Washington is viewed in its totality, Washington falls far short of casting any genuine doubt as to the believability of DCFS's legitimate, nondiscriminatory explanation for its actions.[11] Accordingly, because Washington fails to raise any genuine issue of material fact as to pretext, the Court finds that DCFS is entitled to judgment as a matter of law.

## CONCLUSION

Washington's plight, unfortunately, is one faced by many employees in this age of "downsizing" and "trying to do more with less." As this case documents, downsizing affects both the private and public sectors. In fact, the Court notes that a large part of the downsizing that affected Washington reflected the defendants attempts to comply with a consent decree that required the elimination of administrative positions, such as the one held by Washington.

■ Despite this Court's concern for Washington, the fact remains that, standing alone, membership in a protected group will not shield an employee from downsizing. Washington must show that she was the victim of intentional discrimination because of her membership in a protected group(s). She has not come close to meeting this burden. Because no rational trier of fact could determine that Washington has shown, by a preponderance of the evidence, that DCFS's explanation for its actions was a pretext for intentional race, sex or age discrimination, and that "but for" that discrimination her position would not have been eliminated, DCFS's motion for summary judgment is granted in its entirety. Judgment is hereby entered in favor of Illinois Department of Children and Family Services and against Barbara Washington. This case is dismissed

**10.** In this regard, the Court notes that Washington's evidentiary showing as to the relative ease of transferring job responsibilities is virtually barren. All Washington offers is a statement to the effect that the duties of the other managers working under Caldwell could have been transferred as easily as hers—supported only by a general citation to the relevant position descriptions (not a shred of evidence as to how the DCFS decision-makers actually went about the task of determining which positions could be most easily transferred). This Court may not properly review the position descriptions (which may or may not accurately reflect the actual duties of the positions—Washington presents no evidence on this point) and second-guess the business judgment of DCFS's decision-makers.

**11.** The Court expressly notes that Washington has also not raised a genuine issue of material fact as to whether the implementation of the RIF was conducted in a discriminatory manner.

with prejudice. Each party to bear their own costs.